## LEVI F. STEVENS *vs.* PETER C. TUITE & others.

A manufacturer, from whom the entire machinery of his cloth printing factory, in running
order and actual use, was replevied, including steam apparatus for supplying the motive
power, took judgment for a return and for damages assessed by computing interest on
the appraised value of the property from the date of the writ to the date of the judg-
ment, under an agreement expressly provided to be without prejudice to his action on
the replevin bond. On the demand of the officer upon the writ of return, tender was
made of all the machinery except the steam apparatus, with an offer to pay the value of
that, or to replace it. This tender was not accepted; and the writ was returned in no
part satisfied, and suit brought on the bond. *Held*, 1. that the officer had a right to treat
the property as an organized whole, and refuse the offer to return part of it; 2. that
the manufacturer's claim for damages, in the action of replevin, included compensation
for the general inconvenience and loss resulting from the interruption of his possession,
and for the expense, trouble and delay of restoring the factory to its former condition, as
well as interest on the value of the property; but 3. that the claim was an entire claim
and no portion of it recoverable in the suit on the bond, notwithstanding the proviso in
the agreement under which he took his judgment; and 4. that the measure of his dam-

ages in the suit on the bond was the sum which, under the ordinary circumstances at-
tending a sale, might reasonably be agreed upon as a fair price for the property, between
a seller desirous of selling, and a buyer desirous of buying, it as a whole, to be used in
the place from which it was taken and for the purposes for which it was intended and
arranged.

CONTRACT on the replevin bond taken in the case of *Tuite* v. *Stevens*, 98 Mass. 305. At the trial in this court, before *Morton*, J., the plaintiff put in evidence an auditor's report, the material parts of which were as follows:

" The plaintiff in the present action, being defendant in the original replevin suit, recovered judgment against Tuite, the plaintiff therein, for $1448.02 damages, and $224.80 costs, and for a return of the goods replevied. The date of the replevin was October 19, 1865; judgment for return was recovered December 7, 1867; and the writ of return was issued December 12, and demand made thereon for restitution of the goods replevied, as appears by the officer's return, December 19, 1867. The execution has been in no part satisfied, and no part of the goods has been returned.

" The property replevied consisted of the machinery, apparatus, tools, implements, trade fixtures and entire equipment of an establishment for printing woolen cloths, and included, among other things, steam engines and boilers, a steam pump, and other steam apparatus, screw presses, power presses, printing machines, copper print rolls, press plates and papers, shafting, belting and pulleys, and a large amount of steam piping — the whole being designed, adapted and arranged for carrying on the business of cloth printing, and at the date of the replevin being in complete running order and actual use in that business. The plaintiff in this action derived his title to the property under a mortgage from Daily & Worthen, by whom the establishment had been fitted up a few months before the replevin suit, although a considerable part of the machinery and apparatus therein had been removed from premises which they formerly occupied for the same purpose. At the time of the replevin, he had perfected his title by foreclosure, and secured a lease of the premises in which the property was situated and was

engaged there in the business of cloth printing on his **own** account.

" It was assumed by the counsel for both parties, that the general rule of damages to be applied was the market value of the property replevied at the date of the demand made upon the writ of return, supposing it to be at that time in the same order and condition as it was when replevied, with interest from the date of such demand, added to the amount of the judgment for damages and costs in the original action, with interest thereon from the date of such judgment. But in the application of this rule to the facts of the case, and as to the mode and principle by which such market value was in this case to be ascertained, they differed, the counsel for the plaintiff contending that such value was to be determined by ascertaining for what sum the plaintiff could replace the property replevied with property of like character in the premises, including the cost of placing and setting up the same; and the defendants' counsel contending that the measure of market value was such sum as the property would bring if sold after being taken on replevin, and removed from the premises in which it was found.

" The testimony of witnesses familiar with the property, and experts in its valuation, was introduced for the purpose of showing its nature, condition and value. I find, upon the testimony produced, that some portions of the property replevied were articles having in themselves a fixed or ascertainable value, as articles of bargain and sale, and capable of being readily disposed of at such market value, either at public or private sale, removed from the premises in which they were situated, and separated from the other machinery and apparatus in connection with which they were used. But I find that other portions of such property, if so removed and separated from the establishment of which they formed a part, and disconnected from the machinery and apparatus in connection with which they were designed and adapted to be used, would be thereby deprived of a great part of their value, and could be disposed of only at a price greatly inferior and disproportionate to their cost, and to their value when sold, as used in connection with the other parts of said property."

" Upon these facts, I have not adopted the rule or method contended for by either party before me, in determining in this case the market value of the property replevied. I have not adopted as the measure of damages in this case the cost of replacing the property replevied in the premises occupied by the plaintiff with other like property, including the cost of procuring, placing and setting up the same, because, although that rule might afford only an indemnity to the plaintiff, it appears to me to include a portion of the damages which were recoverable, and which I must assume were recovered, in the original replevin suit. But, in ascertaining the fair market value of the property, I have not, on the other hand, adopted as the limit of such value the price which the several articles replevied would bring if separately sold at public or private sale after being taken from the premises in which they were found and disconnected with each other; because they were not replevied in such condition, but were taken under such circumstances and conditions that they should be considered as constituting the connected component parts or elements of a single organization and subject matter the value of which is capable of being ascertained as a whole. I have therefore adopted, as the measure of the market value of the property replevied in this case, that sum which, under the ordinary circumstances attending a sale and purchase, might reasonably be agreed upon as a fair price for such property between a vendor desirous of selling and a purchaser desirous of purchasing the property as a whole, to be used in the place where it was situated, and for the purposes for which it was intended and arranged.

" Applying this rule and method of ascertaining the market value of the property to the evidence before me in this case, I find that, at the date of the demand made upon the writ of return, the fair market value of the property replevied, provided it had remained in the same order and condition as when taken in replevin, was \$12,750. And I accordingly report that the plaintiff in this suit is entitled to recover of the defendants the said sum with interest from December 19, 1867, in addition to the sum of \$1672.82, the amount of judgment in the original re-

plevin suit, with interest on the last sum from December 7, 1867 the date of said judgment."

The plaintiff then offered, and, against the objection of one of the sureties, was permitted to introduce, the testimony of his counsel in the action of replevin, that the judgment therein was entered upon an agreement between him and Tuite's counsel in that action, by which damages were assessed by computing interest upon the appraised value of the replevied chattels from the date of the writ of replevin to the date of said judgment, and that this agreement was stipulated, and in a memorandum thereof (which was put in evidence) was expressed, to be " without prejudice to action on bond."

The plaintiff here rested his case; whereupon the defendants sought to prove that, when the officer made demand for the replevied chattels upon the writ of return, one of the sureties offered to return all of them except the boilers, engines and steam pump, in as good condition as when replevied, and to pay the value of the boilers, engines and pump, or replace them with others, and also to pay the damages and costs. But the judge, on the plaintiff's objection, rejected this evidence.

The defendants contended, on the whole case, that the plaintiff could not recover more than the value of the replevied chattels, estimated as if they had been sold after their removal from the factory on the writ of replevin; and thereupon, by agreement of the parties, the judge directed a general verdict for the plaintiff, and reported the case for a revision of his rulings on evidence and a determination of the true rule for the assessment of damages by an assessor.

*H. W. Paine & E. Avery*, for the defendants.

*T. H. Sweetser & N. St. J. Green*, ( *C. S. Lincoln* with them,) for the plaintiff.

AMES, J. In the action of replevin, it is sometimes said that each party is an actor, or plaintiff. It is substantially in the nature of a proceeding *in rem*. The question litigated is, whether the plaintiff is entitled to keep the property which he has taken from the defendant, or is bound to return it to him with damages for having intermeddled with it. The property in dispute

may be said to be in the mean time in the custody of the law; that is to say, it is represented by the bond, which imports that it is held by the plaintiff to abide the event of the suit and to be disposed of accordingly.

If the plaintiff prevails, the result of the suit is, that, in the judgment of the court, the property belonged to him; and that he did right in taking it, and may lawfully continue to keep it, and dispose of it according to his pleasure. As the prevailing party, he would in that event recover damages and costs. The value of the goods would not make a part of his damages, for the reason that from the commencement of the suit he has had the property in his own hands, and is now adjudged to be the rightful owner. In most cases, his damages are but nominal and constructive, such as are incident to the vindication of a right that has been denied or violated, rather than for reparation for a substantial pecuniary loss.

On the other hand, if the defendant in the replevin, as in this instance, should be the prevailing party, (except in cases in which he prevails merely on the ground of some technical informality distinct from the merits,) the legitimate inference would be, that the property belonged to him, or at least that the plaintiff had no right to it, and by interfering with it was guilty of a violation of the defendant's right; and that the latter is entitled to have it restored to him, and also is entitled to indemnity, in the shape of damages, for the wrong done in taking it out of his possession. The judgment, as ordinarily made up in such a case, assumes that the plaintiff, in compliance with the order of the court, will return the property, or that the sheriff (if he should refuse so to do) will take it from him and return it to the defendant; and that the pecuniary loss and general inconvenience which the wrongful act of the plaintiff has occasioned to the other party are to be covered by the judgment for damages. It is the business of the jury to assess these dam ages, unless the parties see fit to have them ascertained in some other manner. The value of the property is not in any event to be included, because the bond stands in place of the property and in contemplation of law is capable of causing its im-

mediate restoration. Even in the case of perishable property or such as has worn out or depreciated by use, or been destroyed by fire or other accident, or removed by being sold, or otherwise, to a distant part of the country since the service of the writ, the bond would still continue to represent it, and the remedy upon the bond is understood to be its equivalent.

It is evident that the mere restoration of the property, or its equivalent in money, would fall short, and in many cases very far short, of being an indemnity for the wrong done to the defendant by interruption of his possession. Where that wrong consists merely in the detention of property, without waste or depreciation; or in the compulsory postponement of the exercise of his rights under legal process, the interest upon the value may be an adequate measure of the damages. Gen. Sts. c. 143, § 14. But the wrong to the original defendant (and present plaintiff) was more than the mere detention of the property and interruption of its use. It was more injurious to him than if he had been simply locked out of his place of business during the pendency of the suit. His complaint is, that his cloth printing establishment was wrongfully broken up; his steam-engine, machinery, fixtures and apparatus taken down and carried away; and that returning the property or its equivalent in money will still leave him subject to the great expense, inconvenience and delay of the entire reconstruction of his works. It is manifest that the damages actually awarded him do not cover all the elements of damage which he was entitled to prove, and might have proved; and that the amount allowed him was for that reason inadequate as an indemnity for the wrong that he had sustained.

The difficulty in the present plaintiff's case lies in the fact that all these elements of claim are comprehended under the general head of damages recoverable in the original action. The time to prove his damages, and to have them assessed, in order to be included in the judgment, was when the replevin suit was before the court and on trial. At that stage of the case, and for that purpose, he certainly was an actor or plaintiff, claiming compensation for the injury done him by the wrongful act of

replevying his goods out of his hands. In contemplation of law, his claim for compensation (independently of the return of the goods, or their equivalent in money, as secured by the bond) would be made up of, 1st, interest on the money value ; 2d, the general inconvenience and loss resulting from the interruption of his possession ; and 3d, the expense, trouble and delay attending the operation of replacing everything and restoring the establishment to its original condition. This is an entire and indivisible claim. He cannot recover part of it in one action, and subsequently maintain another action for the remainder. *Warren* v. *Comings,* 6 Cush. 103. *Bennett* v. *Hood,* 1 Allen, 47. It will not avail him to show that part of his true claim was omitted by accident or misapprehension. " The time for such proof has gone by. He has had his day in court. It was the very thing which he might and should have proved in the suit in which the judgment was recovered." *Fuller* v. *Shattuck,* 13 Gray, 70, 71. *Homer* v. *Fish,* 1 Pick. 439.

It may be said, that, under the order to return the goods " in like good order and condition as when taken," the original plaintiff was bound not only to deliver them to the party, and at the place from which they were taken, but also to replace them in the same position as before, and in the case of machinery, to put it in working order in its original place. We think, however, that such a construction of the order would lead to much practical inconvenience, and is not required by a fair interpretation of the words. It might be a matter of much detail and expense to carry out the order in that manner, and each item might be a matter of much controversy and litigation. The original defendant, in order to go on continuously with his business, may have been compelled to supply himself with new machinery, engines and fixtures to take the place of those that were improperly taken from him ; in which case the literal replacement of the replevied property in its original position would be very inconvenient and unreasonable. The general object of indemnity to him, on his proving to be the prevailing party, would be as effectually and much more conveniently secured by a computation by the jury of his damages, according

to the rule above laid down, in the trial of the suit. It is true, this computation would necessarily be to some extent a matter of estimate, in advance of the actual outlay; but this inconvenience, such as it is, would be slight, compared with that which would result from the other construction of the rule.

The condition of the bond is, that the plaintiff in replevin " shall pay all such costs and damages as the defendant in replevin shall recover against him, and shall also return the goods replevied in like good order and condition as when taken, in case such shall be the final judgment." There is no provision for the assessment of those damages, or for the correction of any mistake in their assessment, in a suit upon the bond. The damages intended by the bond are those recovered against the original plaintiff and in the original suit. If he had paid those damages and costs, and also given up the property to the officer when demanded under the judgment, we do not see how there could be said to be a breach of the condition of the bond. The *caveat* contained in the agreement as to the damages does not in our opinion vary the case.

The rule adopted by the auditor appears to us, therefore, to have been entirely correct. We think that he rightfully considered the plaintiff's establishment as an organized whole, and rejected all evidence of an offer to return a part. The case is therefore to be sent to an assessor, in order that damages be computed upon the principles above set forth.

*Ordered accordingly.*