## S. M. BELL, *et al.*, v. P. B. CAMPBELL.

MEASURE OF DAMAGES, *In Actions of Replevin.* In an action of replevin for a horse, buggy and harness, where the defendant gave bond and retained the possession of the property pending the action, it was not error for the court at the trial to give the jury the following instructions, to-wit: "If you find for the plaintiff in said cause you will assess his damages at the value of the use of the property taken by the defendant from the time of the taking of the same up to the present time."

*Error from Chase District Court.*

REPLEVIN, to recover property alleged to have been wrongfully taken and wrongfully detained. The facts are sufficiently stated in the opinion. The plaintiff had judgment at the October Term 1874. Defendants *Bell* and *Sutton* bring the case here on error.

*Ruggles & Sterry,* for plaintiffs in error.
*Almerin Gillett,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin for a horse, buggy, and harness. The defendants (now plaintiffs in error) gave a bond under § 182 of the civil code, and retained possession of the property pending the action. At the trial of the case the court below gave to the jury the following among other instructions, to-wit:

"If you find for the plaintiff in said cause, you will assess his damages at the value of the use of the property taken by the defendants from the time of the taking of the same up to the present time."

The jury did find in favor of the plaintiff and against the defendants, and assessed the value of the property in controversy at $475. They also, in accordance with said instruction, assessed the plaintiff's damages for the unlawful detention of the property at $210. Seven per cent. interest on the value of the property for the time it was unlawfully detained would have amounted to $87.27. The plaintiff then remitted all the damages in excess of $87.27, and the court below then rendered judgment in favor of the plaintiff (now defendant in error) and against the defendants for a recovery of the property in controversy, or in case the property could not be obtained then for the value thereof, to-wit, $475, and for said $87.27 damages, and also for costs of suit.

The plaintiffs in error claim that the court below erred as to the measure of damages. They claim that the true rule for the measure of damages in such cases as this is the inter-

est on the value of the property while wrongfully detained, and is never the value of the use of such property. We think however the court below did not err in this respect. We have just decided two cases in which we have substantially sustained the ruling of the court below in this particular. (*Yandle v. Kingsbury*, ante, 195, and *Ladd v. Brewer*, ante, 204.) It is true, that interest on the value of the property wrongfully detained is sometimes, in replevin cases, considered as the proper measure of damages. But it never was considered as the only damages which might be allowed in replevin cases. And in the nature of things it should not be. In some cases deterioration of the property from injury, neglect, etc., while wrongfully detained, must be considered as an element in the allowance of damages. In other cases, the decrease in the market value of the property must be taken into consideration. In other cases, perhaps few, gross malice, fraud, and oppression may be taken into consideration for the purpose of giving exemplary damages. (*Herdick v. Young*, 55 Penn. St. 176; *Cable v. Dakin*, 20 Wend. 172.) In other cases, the value of the use of the property must be taken into consideration for the purpose of giving compensatory damages. *Allen v. Fox*, 51 N. Y. 562; *Morgan v. Reynolds*, 1 Montana, 163; *Butler v. Mehrling*, 15 Ill. 488; *Robbins v. Walters*, 2 Texas, 130; *Dorsey v. Gassaway*, 2 Har. & Johns. 402, 413; *Gibbs v. Cruikshank*, 8 C. P. 454; *Williams v. Phelps*, 16 Wis. 81; *Glascock v. Hayes*, 4 Dana (Ky.) 58; *Hall v. Edrington*, 8 B. Mon. 47, 48; *Hudson v. Young*, 25 Ala. 376. The last three relate to detinue, the others to replevin. And still in other cases other damages than those above mentioned are sometimes allowed in actions of replevin. In Massachusetts, in an action of replevin, where part of a manufacturer's machinery was taken and wrongfully detained, it was said by the court that the damages "would be made up of, 1st, interest on the money-value; 2d, the general inconvenience and loss resulting from the interruption of his possession; and 3d, the expense, trouble and delay attending

the operation of replacing everything, and restoring the establishment to its original condition." (*Stevens v. Truite,* 104 Mass. 328, 335.) Indeed, in every action of replevin the plaintiff or the defendant, as the case may be, should be allowed to recover all the damages, not too remote, which he has actually sustained by reason of the wrongful detention of the property, in whatever way such damages may have resulted. Exact compensation for his loss is the true rule. In a late case in England, decided in 1873, Bret, J., says: "Replevin is a common-law action for the taking of goods. By the course of procedure in that action the goods are returned in the course of the action. It was argued by Mr. Foard that the action was for the mere purpose of recovering back the goods. I do not think that can be so, for if so the plaintiff could never have recovered what in every action of replevin he does recover, the expenses of the bond. It seems to me that whenever, in a common-law action, the plaintiff can recover damages, *he must be entitled to recover all the legal damages he has sustained.*" (*Gibbs v. Cruikshank,* 8 L. R., C. P. 463.) And in the same case, Bovill, C. J., says: "When the goods were not redelivered by the sheriff, according to the books it would appear that the plaintiff could recover *the full amount of the damages that he had sustained* by the taking of the goods. *I am not aware of any authority to the contrary,* and I see no reason in principle why there should be any limitation as to the amount of the damages recoverable in such a case. I do not know of any ground in law for confining the damages to the amount of the expenses of the replevin bond. In practice these expenses are all that are recovered, merely because there is generally no other damage. The form of the declaration in replevin states that a wrongful act has been committed by taking the goods, and claims for the damages that have accrued to the plaintiff by reason of such wrongful taking. *It appears to me that whatever damages have been actually sustained may be recovered.*" (Same case, pp. 459, 460.) The decision of this last-mentioned case was in accordance with the opinions of the above-named

judges. In a late case in New York, decided in 1873, Earl, C., who delivered the opinion of the court, says: "I have found no case, unless it be the case in 4 Lansing, where it has been held that the value of the use may not be recovered as damages for the detention in case the property has (what I have for brevity called) a usable value." (*Allen v. Fox*, 51 N. Y. 567.)

The plaintiffs in error claim that in trover the plaintiff can recover only for the value of the property taken, and interest thereon; that replevin is governed by the same rules as trover, and therefore, that the plaintiff can recover in replevin merely the property taken or the value thereof and interest on such value. Now admitting, for the purposes of this case, that the plaintiffs in error are correct so far as trover is concerned, still they are certainly mistaken with respect to replevin. The two actions are very dissimilar. In trover the plaintiff elects to consider the property taken (if the property is still in existence,) as having become the property of the defendant, and he himself is owner of nothing but the mere value of such property, which value he seeks to recover. While in replevin the plaintiff continues to be the absolute owner of the property itself, (if he was the owner previously,) and he cannot elect in such action to take the value of the property instead of the property itself. (*Wilson v. Fuller*, 9 Kas. 193; *Hall v. Jenness*, 6 Kas. 365.) In trover the defendant detains nothing from the plaintiff but the value of the property, that is, money; while in replevin he detains the property itself. In either action the plaintiff is entitled to recover for the use of the exact thing which the defendant detains from him; but the great difference is in the thing detained. In trover, it is substantially money. In replevin, it is not money, but is some kind of property different from money. Now the law fixes the value of the use of money, but it does not fix the value of the use of any other kind of property. Therefore, in trover it would be proper to give the plaintiff seven per cent. interest on the value which he recovers, for that is the legal value of

the use of money; but in replevin, the value of the use of the property cannot be known except by evidence. In trover, a plaintiff should not be allowed to recover for the use of the property taken, for the property by his own election does not belong to him, but belongs to the defendant. In trover, he should be allowed to recover merely for the value of the property, and the use of such value. But in replevin it is different. There the plaintiff owns the property itself, and therefore should be entitled to recover for the use of the property, and not merely for the use of the value thereof. In trover the plaintiff never expects to recover the property back again, for it has already become the property of the defendant, and that by the plaintiff's own election, if the property is still in existence. And therefore, in trover it may fairly be inferred that the plaintiff does not need the property, or that he could go into the market without inconvenience and purchase like property. But this is not so in replevin. In replevin the plaintiff expects to recover his original property back again; and hence it is fair to infer that he needs the property, and that he could not without great inconvenience (if he could at all) go into the market and purchase other property like it. But even if he could purchase other property like it, he should not be required to do so, for afterward when he recovers his own he would have duplicates of the same property, and might therefore be subject to further and additional inconvenience and loss. Very few persons would want to own two reapers, two pianos, two fine carriages, or two fine stallions, at the same time, even if they were able to do so. Besides, interest on the value of such property would generally be very inadequate compensation for the loss of the use of the property. The services of a fine stallion for a single month might be worth one or two hundred dollars, while interest on his value for the same length of time might not be five dollars. The same with reference to a reaper, or mower, and probably several other kinds of property. The services of even a farm-horse worth one hundred dollars, for the months of April, May and June, would

probably be worth fifty dollars, while the interest on his value for the same time would be only one dollar and seventy-five cents. Who ever heard of a livery stable keeper hiring a horse out for the interest on his value? The interest on a horse worth two hundred dollars, would be less than four cents per day. The interest on a carriage worth five hundred dollars, would be less than ten cents per day. The interest on a farm-wagon worth one hundred dollars, would be less than two cents per day. Would such rates be adequate compensation for the loss of the use of property? Would the aggrieved party who should receive as compensation such rates feel that he had been amply paid for the *wrong* inflicted upon him? Would damages at such rates be sufficient to discourage wrongdoing of this kind? Would not such damages rather encourage such wrongdoing? It would be a very cheap way to get the use of property if it could be got at such rates.

But even if we should concede that the plaintiffs in error are correct, and that interest merely on the value of the property should be allowed as damages, still we do not see how they expect to have the judgment in this case reversed. The judgment was rendered in the court below precisely in accordance with their views of what is the correct measure of damages. Therefore, taking any view of the case, the judgment of the court below must be affirmed.

KINGMAN, C. J., concurring.

BREWER, J.: I concur in the judgment, but only upon the ground last mentioned in the opinion.