THE CITY OF OKLAHOMA CITY, V. P. J. HILL AND J. T. HILL, *Partners doing Business under the Firm Name of Hill Brothers.*

1. FORCIBLE ENTRY AND DETAINER—*Pleading.* In a forcible entry and detainer case all defenses may be interposed under a general denial and it is not reversible error to strike from the answer a special defense, even though the special paragraph might plead a good defense.

2. SAME—*Notice.* A notice as a basis of a forcible entry and detainer proceeding, which is addressed to M., as the mayor of the city, and which notifies the city to leave and vacate the premises described therein within three days or an action will be commenced against the city, and which is signed by the parties claiming the property, is sufficient. A substantial notice to quit and leave the premises, and not technical accuracy, is what the statute requires.

3. SAME—*Notice Signed—Sufficient.* It is not necessary that the names of the parties who claim the property should appear in the body of the notice; it is sufficient if the names are signed to the notice given.

4. SAME—*Evidence—Rejection of.* An action of forcible entry and detainer may, under the statute of this Territory, as construed by the supreme court of Kansas before its adoption, be maintained by one who was, without right, in the actual and peaceable possession of the premises, even against the true owner who ousts him of such possession by force; and in a case where it is shown that the plaintiffs were in the actual and peaceable possession of certain town lots, with the buildings thereon in one of which the plaintiffs were running a saloon, and the sheriff arrested the plaintiffs under a charge of violation of the liquor laws and removed them and their goods and furniture from the building, and while they were under arrest for a short time the sheriff permitted the officers of the city, who were standing by, to enter into possession of the building and keep the plaintiffs therefrom; it is *held,* that the plaintiffs may maintain their action of forcible entry and detainer, and that in such case it is not error to sustain an objection to the introduction of evidence tending to show that the sheriff had a right to arrest plaintiffs and take their goods and furniture from the building, and the defendant had a deed to said premises, and that the plaintiffs had no right to the possession thereof. If the sheriff, in such a case, had the right to arrest the plaintiffs, and take their goods and property from the building, he had no right to deprive the plaintiffs, by force, of the possession of the building; and it is no defense for the city to say that it was not a party to such dispossession, when its officers stood by and saw and took advantage of these acts of the sheriff.

5. SPECIAL QUESTIONS—*Right to Have Submitted.* A party has a right to submit to the jury special questions of fact, which are within the issues in the case, and a refusal to submit such questions to the jury is material error.

*Error from the District Court of Canadian County.*

*W. R. Taylor, R. G. Hays, J. S. Jenkins* and *John I. Dille,* for plaintiff in error.

*Amos Green & Son,* for defendants in error.

The opinion of the court was delivered by

BIERER, J.:   This was an action brought in the probate court of Oklahoma county by P. J. and J. T. Hill, partners as Hill Brothers, against the city of Oklahoma City, to recover possession of lots 40 and 41, in block 23, in Oklahoma City.

The plaintiffs alleged in their bill of particulars that on the 31st day of October, 1893, they were in peaceable and rightful possession of the property described, and that the defendant and its officers wrongfully, illegally and forcibly entered upon the premises and forcibly took possession thereof, and that the defendant still forcibly and wrongfully holds and detains said premises from the plaintiffs.   The bill of particulars also alleges notice to quit and leave the premises duly served more than three days before the action was brought, and the bill of particulars was filed on the 15th day of November, 1893.

On trial in the probate court judgment was had for defendant, from which plaintiffs appealed to the district court, and on application of plaintiffs the venue of the cause was changed to Canadian county.

The defendants, on leave of court, had filed an amended answer, in two paragraphs; *first,* a general denial, and, *second,* a special defense, alleging that on April 22, 1889, the lots and real estate claimed by the plaintiffs were public lands of the United States, and were, on that day, settled upon and occupied as a government townsite; that afterward townsite trustees were duly appointed, as provided by law, who made entry of

said lands, and surveyed and platted the same; and that afterward, on the application of the plaintiffs for title to said lots, before said townsite board, it was found that the plaintiffs had entered the Territory of Oklahoma in violation of the Act of Congress of March 2, 1889, pro· hibiting the entry upon said lands or into the Oklahoma country prior to the time the same should be opened to settlement, and that for this reason the lands were awarded to the city, and that the city is the lawful owner of the lots, and holds the legal title thereto.

On motion of the plaintiffs this second paragraph of the answer was stricken out.

On trial before a jury the plaintiffs proved that they settled on these lots in controversy on the 22d day of April, 1889, and soon thereafter placed buildings upon the lots, covering all of the lots excepting about ten by fifty feet on the back portion of the lots, and off the street. That the lots were on and adjoined the southwest corner of the block, and extended north and south, facing Broadway on the south, and lying adjacent to Grand Avenue on the west.

The plaintiffs, by themselves and their tenants, remained in peaceable possession of these lots and buildings from the time the buildings were erected, soon after April 22, 1889, up to the morning of October 31, 1893, the eastern building being rented to tenants, and the western building, occupying about eighteen feet, being used by the plaintiffs in running a saloon and billiard hall, the upper rooms of this building being also occupied by the plaintiffs.

It was proved by the plaintiffs that shortly prior to October 31, 1893, the city had employed special counsel to procure possession of these lots for the city, and the mayor had directed the chief of police of Oklahoma City

to be present when the sheriff and his deputies should arrest the plaintiffs and their employes under a charge of maintaining screens upon their saloon windows, and for running or permitting gambling devices to be run on the premises where liquors were sold, in violation of a statute which makes these things unlawful and requires the officers making the arrest to take the furniture and utensils used in the place where such violations of law are committed, and transport them, with the defendants, before a justice of the peace; and that when the plaintiffs with their furniture should be thus taken out of the building, while under arrest, the city officers should move into and occupy the premises in which the plaintiffs were carrying on the saloon business.   That on the morning of the day stated, at about 5 o'clock, the sheriff, with a number of deputies, and the chief of police, with some special policemen, and a member of the council, went to the premises, the sheriff and his deputies arrested the plaintiffs, and proceeded to remove all the furniture and fixtures of the plaintiffs from the west building, and the policemen and city officers immediately moved into and took possession of this building, and on the return of the plaintiffs, in about an hour and a half, they, having been released from custody, were refused admittance into the premises.   The plaintiffs also proved notice to quit the premises, which will be hereafter referred to more specifically.

The first error that is assigned is in the action of the trial court in sustaining the motion of the plaintiffs to strike the second paragraph from the answer.   It is contended that this answer set up a defense which they were entitled to interpose in a forcible entry and detainer proceeding.   Whether this is true, it is not necessary to determine, for even if the matter alleged was a good de-

fense to the action, the striking it out does not constitute reversible error.

No pleading is mentioned under the special provisions of the justice code relating to forcible entry and detainer, excepting the complaint. No answer whatever is, by these provisions, required of the defendant, and under the general provisions of the justice code, in any other proceeding than forcible entry and detainer, no answer is required of the defendant, unless it is demanded by the plaintiff.

In the case of *German v. Ritchie*, 9 Kan. 106, it was held that:

"Where there is no bill of particulars filed by the defendant before a justice of the peace, and no demand therefor, and on appeal no new pleadings are made and no demand is made for any pleadings, the defendant may introduce in evidence any defense that he may have."

Now, if it is true, as the supreme court of Kansas has held, that in ordinary proceedings before a justice of the peace, where no answer is demanded of the defendant by the plaintiff, the defendant may introduce in evidence any defense that is pertinent to the case, it is certainly equally true in forcible entry and detainer proceedings where the statute does not require the defendant to make any answer whatever. And, if the defendant in this case could have made the very defense which it alleges it was error to strike from its answer, without being plead, it was certainly not reversible error to strike it out, for he was in as good a position with the matter stricken out as he would have been with it left in his pleadings.

In the case of *Poffenberger v. Blackstone*, 57 Indiana, 288, under a justice of the peace procedure act similar to ours, it is held that in a forcible entry and detainer case all defenses may be given in evidence, without plea, and

therefore the sustaining of a demurrer to an answer is harmless. Therefore, whether this was a good or bad defense, there was no reversible error in striking it out, for the defendant was not put in a worse position without it than he was with it.

The next contention is that the notice to quit the premises was insufficient. This notice, which was duly served on the mayor of Oklahoma City, was as follows: "Hon. O. A. Mitscher,

   "Mayor of Oklahoma City:

"You are hereby notified that the said city has wrongfully and illegally taken forcible possession of lots Nos. 40 and 41, in block 23, in Oklahoma City, together with all buildings thereon, and are now forcibly, detaining the same, and you, as mayor of said city, are hereby requested and notified to leave and vacate said premises within three days, or an action will be commenced against said city to recover possession thereof. November 9, 1893.

       "P. J. AND J. T. HILL,

         "By AMOS GREEN & SON, Attorneys."

The first objection to this notice is that it was not addressed to "The City of Oklahoma City," as the statute makes its title, but to O. A. Mitscher, mayor of Oklahoma City.

The statute requires that a party desiring to commence an action under the forcible entry and detainer act shall "notify the adverse party to leave the premises, for the possession of which the action is about to be brought," which notice shall be in writing.

The statute pertaining to cities of the first-class, of which Oklahoma City is one, provides that the name of the city shall be "The City of," and as applied to this case the proper name would be "The City of Oklahoma City;" and it also provides that all notices and processes shall be served upon the mayor.

Now, while had technical accuracy been followed, the appropriate notice would probably have been addressed to "The City of Oklahoma City," and served upon the mayor, yet we do not preceive that there has been such a departure from the statute as to make the notice insufficient. The notice was served upon the mayor, and it does substantially say that the city of Oklahoma City has wrongfully and illegally taken forcible posession of the lots in controversy, and the city, through its mayor, is requested and notified to leave and vacate the premises; and is also notified that action will be commenced against the city if posession is not given. This, we think, substantially complied with the statute.

In the case of *Seeley v. Adamson*, 1 Oklahoma, 78 this court held:

"That while accuracy in the description of the property in the notice is required, yet as in all cases of the kind requiring notice, what is required is substantial and not technical accuracy. The law will not regard mistakes which do not mislead the party notified."

The second objection to this notice is that the name of the party who claims the posession of the property must appear in the body of the notice, and the case of *Nason v. Best*, 17 Kans. 408, is cited as authority for this contention. It is true the case cited does contain this language, and would support the position, but the later Kansas cases do not follow it.

In the case of *Conaway v. Gore*, 22 Kans. 216, the notice given was as follows:

"To John M. L. Gore and James W. Reed: You are hereby notified and required to forthwith leave the premises hereinafter described, to wit, (description) for the possession of which premises action is about to be brought.

"April 17, 1878.    LLOYD G. CONAWAY."

And of this notice the court said:

"True, he does not say in the body of the instrument that he is the one who claims the possession, and that he intends to bring the action; but he leaves no doubt, for he alone is named in or signs the notice, and he alone brings the action. A certainty may be implied as well as expressed. Such a notice would not be sufficient to sustain action in the name of a third party; nor would a notice in any case be sufficient when upon the face of it there appeared a doubt as to which of two or more parties was claiming the possession. The statute requires simply a notice to leave, and not a notice to surrender the possession to any particular party."

And the notice was there held sufficient. We consider the one here a broader and better notice than that. Nor do we think there is anything in the contention that the Hills should have signed their names as partners.

The next error relied upon is the sustaining of objections to the introduction of certain evidence offered by defendant. The defendant offered in evidence certain papers, warrants and processes of the court issued by the justice of the peace, charging the Hills with a violation of the liquor and gambling laws, and the order of the justice of the peace for the sheriff to seize the utensils and property used by the Hills in their saloon business, in the corner building, and convey them before the justice of the peace; and also offered in evidence the order binding the Hills over to answer said charges in the district court; and the appearance bond in said cases; and the indictment found by the grand jury in the district court; and the plea of guilty to the charges, and the judgment and fine imposed by the court for such violalation. These were offered, as it is stated, for the purpose of showing that there was no conspiracy between the city officers and the sheriff and his deputies to oust the plaintiffs from their possession of the building. The

defendant also offered in evidence the deed from the townsite board to the city for these lots in controversy which deed was issaed on the 18th day of October, 1893, and filed for record in the office of the register of deeds of Oklahoma county on October 20, 1893.    They also offered in evidence testimony of witnesses who swore they saw the plaintiffs in the Oklahoma country prior to 12 o'clock, noon, April 22, 1889. All this evidence was excluded, and error is based thereon,

Now, if this evidence tended to show that the entry of the defendants upon the plaintiffs' possession was not forcible and unlawful, then it was admissible. But did it have any such tendency? The plaintiffs were in peaceable possession of the property when the sheriff and his deputies and the defendant's officers went there on the morning of October 31, 1893. Suppose the sheriff had a right to arrest the plaintiffs and to take the furniture and utensils used in the unlawful business before a justice of the peace, and suppose this right was based upon a proceeding instituted and warrants issued, and that subsequent proceedings showed that these prosecutions were fully justified, this gave the sheriff no warrant or authority to deprive the plaintiffs of the possession of the building and turn it over to the defendant, and it gave the defendant, through its officers, no authority whatever to stand by and see that done, and certainly that is the mildest light that the proceeding can be placed in, and then ratify and take advantage of this conduct of the sheriff, and enter into the possession of the building while the plaintiffs were under arrest and held out of the building. The sheriff's right to arrest the plaintiffs and seize their furniture gave him no right, under the statute, to seize the building and turn it over to the possession of the city, and the city's ratifica-

tion of that conduct, following so immediately, as the evidence shows, on the heels of the sheriff's forcible ouster, must make, in contemplation of law, this force of the sheriff the force of the city, for it ratified and approved it.

In forcible entry and detainer cases, with reference to the right of the defendant to offer a deed in evidence, we may say that ordinarily it is true that evidence of title may be offered, as proof of the party's right of possession, and for the purpose of showing the purpose for which the entry was made, and to uphold the possession when once peaceably obtained. (*Conaway v. Gore*, 17 Kan. 216.) But the admissibility of evidence must always, in a measure, be determined by the application of the principles to the case in question, and not to a different kind of a case. If the possession had been peaceably obtained, and without force, this evidence would probably all have been pertinent, but, as it was not, the evidence, as applied to this case, was properly rejected.

Upon this question, it is strongly contended by plaintiff in error that the plaintiff in a forcible entry and detainer case must always have the right of possession; that is, he must be entitled to the possession of the particular premises; and that even though the defendant has made the entry by force, the plaintiff cannot recover such possession, unless he has a right thereto.

In this connection it may be said that the trial court instructed the jury upon the theory that the plaintiffs were not entitled to the possession of these premises, but that being in the peaceable possession thereof, the defendants could not eject them by force and gain forcible entry to the premises, to the possession of which they were really entitled, and if they recovered the

possession in this manner the plaintiffs were entitled to maintain their action of forcible entry and detainer.

There are unquestionably very high authorities, under other forcible entry and detainer acts than ours, holding this position of the trial court incorrect, and holding that a party must be entitled to the possession of the premises before he can recover in a forcible entry and detainer case.    But that is not the law of this Territory. We get the law on this question from the adoption of the Kansas statute, and that has been many times construed in that state to mean that a party, although he has no right to the possession, yet he may not be ousted from such possession by force, and if he is ousted by force he can recover the possession which he actually had by forcible entry and detainer proceedings.

The doctrine of our statute is thus stated by Mr. Chief Justice Horton, of the supreme court of Kansas, in the case of *Peyton v. Peyton*, 9 Pac. 479:

"It was unnecessary for the plaintiff to state that she was the legal and equitable owner of the premises.    It is only necessary for her to allege that she had the actual and peaceable possession thereof.    An action may be maintained against any person who commits a forcible entry and ouster, even though the latter is the owner of the property, and entitled to immediate possession, if the plaintiff had at the time of the forcible ouster the actual and peaceable possession thereof.    (*Campbell v. Coonradt*, 22 Kan. 704; *Conaway v. Gore*, 27 Kan. 127; *Burdette v. Corgan*, 18 Kan. 275; *Buettinger v. Hurley*, *ante*, 197, just decided; *Emsley v. Bennett*, 35 Iowa 15.")

This doctrine obtains in the state of Nebraska, under a statute similar to ours.  There, in the case of *Brown v. Feagins*, 55 Northwestern, 1048, it is held:

" An action for the forcible detention of real property may be maintained by one whose complete possession thereof has been ended by the wrongful entry of another,

even though such entry was made under claim of a paramount title."

This doctrine is also maintained by the supreme court of the United States in the case of *Iron Mountain and Helena Railroad v. Johnson*, 119 U. S. 608. This was an action of forcible entry and detainer brought in the United States district court in Arkansas, and taken on appeal to the supreme court of the United States. In this case Mr. Justice Miller, speaking for the court said:

"The general purpose of these statutes is, that, not regarding the actual condition of the title to the property, where any person is in the peaceable and quiet possession of it, he shall not be turned out by the strong hand, by force, by violence, or by terror. The party so using force and acquiring possession may have the superior title or may have the better right to the present possession, but the policy of the law in this class of cases is to prevent disturbances of the public peace, to forbid any person righting himself in a case of that kind by his own hand and by violence, and to require that the party who has in this manner obtained possession shall restore it to the party from whom it has been so obtained; and then, when the parties are in *statu quo*, or in the same position as they were before the use of violence, the party out of possession must resort to legal means to obtain his possession, as he should have done in the first instance. This is the philosophy which lies at the foundation of all these actions of forcible entry and detainer, which are declared not to have relation to the condition of the title, or to the absolute right of possession, but to compelling the party out of possession, who desires to recover it of a person in the peaceable possession, to respect and resort to the law alone to obtain what he claims."

With reference to the propriety of such a statute, it is said in the case of *Peyton v. Peyton, supra*:

"If, however, the law is defective, the remedy is with the legislature, not with the courts."

We, too, feel that the law in this case is perhaps not

the best under which to give effect to the real rights of parties, but it is not for us to change it.

Exception is taken to numerous instructions, given and refused by the trial court, but as they were given on the same theory on which the evidence offered by the defendant was excluded, it is unnecessary to review the question again in this connection.

The last error relied upon is the refusal of the court to submit certain special questions to the jury. One, at least, of these question we think should have been given. This question asked whether the city took possession of all the buildings on said lots, or only the corner rooms and the upstairs over the same. The defendant's denial placed in issue the question as to whether or not it took possession of both lots with the buildings thereon, as well as whether it took possession of so much of the west or corner lot, as it is termed in the evidence, as was covered by the building and rooms in which the plaintiffs were carrying on the saloon business; and it had a right to present to the jury special and pertinent questions on each and all of these issues, under § 4176 of the statute, which reads:

"In all cases the jury shall render a general verdict, and the court shall in any case at the request of the parties thereto, or either of them, in addition to the general verdict, direct the jury to find upon particular questions of fact, to be stated in writing by the party or parties requesting the same."

If, in answer to this question, the jury had stated that the defendants only took possession of the corner rooms and the upstairs over the same, the plaintiffs could have recovered from the defendant only so much of the two lots as was embraced within the part taken possession of by it; while under the judgment the plaintiffs recovered from the city all of the two lots, with the buildings

thereon. The materiality of the question refused is thus very apparent.

A party has a right to submit to the jury special questions of fact which are within the issues of the case, and a refusal to submit such questions to the jury is material error. (*Wichita & W. R. Co. v. Fechheimer*, [Kansas] 12 Pac. 362; *Elliott v. Reynolds*, [Kansas] 16 Pac. 698.)

For the error in refusing to submit this special question to the jury, the judgment is reversed, and the case remanded for a new trial.

Dale, C. J., having presided in the court below, not sitting; all the other Justices concurring.