SAMUEL W. TUCKER *vs.* TREMONT TRUST COMPANY & others.

Suffolk.    March 9, June 26, 1922. — June 27, 1922.

Present: RUGG, C. J., BRALEY, DE COURCY, & CARROLL, JJ.

*Replevin,* Bond.    *Damages,* In action on replevin bond.

Damages for depreciation in the value of replevied property between the time when the goods were taken upon the writ of replevin and the date of a judgment for the defendant in the action of replevin are recoverable in proceedings upon the replevin bond, since they arose from failure to comply with the condition of the bond, "to see that the property was restored to the plaintiff in like good order and condition as when taken."

BILL IN EQUITY, filed in the Superior Court on March 15, 1921, by Samuel W. Tucker, a deputy sheriff in the county of Middlesex, against The Tremont Trust Company as principal and Benjamin H. Swig and Simon Swig as sureties on a replevin bond, seeking a determination of the amount due the plaintiff for costs and expenses in an action for the replevin of three motor trucks brought against him by The Tremont Trust Company in which final judgment was rendered for the defendant, the determination of the value of the motor trucks, and to reach and apply in payment of the amount due upon the bond shares of stock of the defendants Swig in The Tremont Trust Company.

The suit was referred to a master. Material allegations of the bill and findings by the master are described in the opinion. The plaintiff filed an exception to the master's report based upon the objection "that the master's conclusion is that the plaintiff is entitled to recover as the full value of the three trucks $3,000, whereas it appears from the master's findings he should recover the sum of $4,000 as the value of the trucks in addition to his other damages."

In the Superior Court, the suit was heard by *Sisk,* J., by whose order there were entered an interlocutory decree overruling the exceptions to the master's report and confirming the report and

a final decree "that the defendants, The Tremont Trust Company, Benjamin H. Swig and Simon Swig are jointly and severally indebted to the plaintiff in the sum of $3,120.52 with interest thereon at the rate of six per cent per annum from February 7, 1921, said interest being $141.98, said total damages being $3,262.50, together with costs of suit taxed by the clerk in the sum of $21.99." The plaintiff appealed.

*F. A. Crafts,* for the plaintiff.

*H. U. Smith,* for the defendants.

CARROLL, J. This is a suit in equity by the plaintiff, a deputy sheriff, against the principal and sureties on a replevin bond. The bill alleges that on November 28, 1917, the plaintiff attached three motor trucks as the property of the New England Fireproof Construction Company, and held them under this attachment until December 18, 1917, when they were taken from his possession by a writ of .replevin brought by The Tremont Trust Company against the plaintiff; that at the time the trucks were taken from the plaintiff's possession, The Tremont Trust Company gave a bond with the defendants Simon Swig and Benjamin H. Swig as sureties; that the condition of the bond was that, if the "Tremont Trust Company shall prosecute said action of replevin to final judgment, and shall pay such damages and costs as the said Tucker shall recover against it, and shall also return the property replevied, in case such shall be the final judgment, then this obligation shall be void, otherwise it shall be and remain in full force and virtue;" that final judgment in the replevin suit was rendered February 7, 1921, in favor of Tucker for the return of the property replevied, $1 damages, and $115.22 costs; that a writ of return issued which was returned unsatisfied; and that the cost of service of the writ of return was $4.30.

The master to whom the case was referred found that the value of the trucks when replevied was $4,000; that their value on February 7, 1921, the date of the final judgment in the replevin action, was $3,000; that the plaintiff was entitled to recover $3,000, the value of the trucks at the date of the final judgment of replevin, $1 damages, $115.22 costs and $4.30 for service of writ of return, making a total of $3,120.52. In the Superior Court the report of the master was confirmed and a final decree was entered for the plaintiff awarding damages in the sum of

$3,120.52 and interest, and it was ordered that execution issue for $3,262.50, and $21.99 costs of suit. The plaintiff appealed.

The plaintiff claims that in this suit on the replevin bond he is entitled to recover the value of the property at the time of the taking, that is, $4,000; and not merely $3,000, the value of the property at the time of the final judgment in the replevin action. The Tremont Trust Company, the plaintiff in replevin, sold two of the trucks in February, 1918, and the third in May, 1918, and it does not appear what has further become of these trucks. The suit on the bond was brought in March, 1921. There was no evidence that the market condition was less favorable on February 7, 1921, when the final judgment in the replevin suit was rendered for the plaintiff, than they were on December 18, 1917, when the trucks were replevied. It was found that two of the trucks were property of such nature that they were liable to depreciate by keeping, but there was no evidence that the trucks had depreciated in value except from age. The question to be decided is whether the plaintiff is entitled to recover the value of the property as of the date when they were replevied in December, 1917, or as of the date when judgment in his favor was rendered in February, 1921.

One of the early cases in replevin is *Swift* v. *Barnes*, 16 Pick. 194. The general principle there laid down was that the plaintiffs on the replevin bond "are entitled to a full indemnity for the damages sustained by the non-performance of the condition of the bond, and that cannot be obtained unless they may be allowed to recover the actual value of the property replevied, at the time when it ought to have been restored on the writ of restitution." The property replevied in that case was sperm oil which had risen in value between the date of the replevin and the date of judgment for return.

In *Parker* v. *Simonds*, 8 Met. 205, the principle of indemnity was restated as the basis of damages in an action on a replevin bond. It was held that the obligation was (in case of judgment in favor of the defendant) to return the property "in like good order and condition as when taken," and in commenting on *Swift* v. *Barnes*, *supra*, it was said at pages 212 and 213: "But a leading feature in that decision is this, namely, that the party injured was entitled to an indemnity, and could not receive it unless the

actual value of the goods, at the time of the demand made, was adopted as the rule to fix the measure of damages. But though the court state the rule, by which the damages are to be ascertained, in strong and general terms, yet it does not embrace every case arising under the process of replevin; and in the case at bar is one of those which are to be excepted from its operation. The goods replevied consisted of household furniture, horses, cattle, wagons, &c. which had been more or less used. At the time of the demand, some of them had been sold; and others were deteriorated and much depreciated in value by further use. They were not all of them goods, like oil and other articles of merchandize, of a current market price; and some having been sold, and others thus deteriorated, the value at the time of the demand could not be ascertained, nor would that value be the measure of damages without a proper allowance for the depreciation, which, under the circumstances of this case, could not be computed upon any accurate date. The only mode, therefore, to give the plaintiff the indemnity to which he is entitled, is, to take the estimate of the value as set out in the replevin bond."

In *Stevens* v. *Tuite*, 104 Mass. 328, the elements of damages recoverable in the original replevin action were described at page 335 in these words: "In contemplation of law, his claim for compensation (independently of the return of the goods, or their equivalent in money, as secured by the bond) would be made up of, 1st, interest on the money value; 2d, the general inconvenience and loss resulting from the interruption of his possession; and 3d, the expense, trouble and delay attending the operation of replacing everything and restoring the establishment to its original condition." It further stated that in estimating these damages or compensation [pages 333, 334], "The value of the property is not in any event to be included, because the bond stands in place of the property and in contemplation of law is capable of causing its immediate restoration. Even in the case of perishable property or such as has worn out or depreciated by use, or been destroyed by fire or other accident, or removed by being sold, or otherwise, to a distant part of the country since the service of the writ, the bond would still continue to represent it, and the remedy upon the bond is understood to be its equivalent."

In *Citizens' National Bank* v. *Oldham*, 136 Mass. 515, the question concerned the damages recoverable in an action of replevin. The property was mail wagons. The precise question was whether the depreciation in the value of the mail wagons was recoverable as damages in the original action. The court there said [pages 517, 518]: "The defendant was allowed to prove, and to recover damages for, the depreciation in value of the property replevied on account of its not being in as good condition at the time of the trial as it was when replevied. The damages recoverable by the defendant are for the taking by the replevin. Gen. Sts. c. 143, § 13. The condition of the replevin bond is to return the property in case such shall be the final judgment. § 3. This means to return it in like good order and condition as when taken; and, if the property should not be in such condition, the defendant would not be obliged to receive it, but could recover its value upon the bond. The court erred, therefore, in allowing such deterioration in value as damages to be recovered in the replevin suit. The defendant's remedy is upon the bond. The matter was so fully considered in *Stevens* v. *Tuite*, 104 Mass. 328, that it is only necessary to refer to that case."

In *Maguire* v. *Pan-American Amusement Co.* 205 Mass. 64, the authority of all these cases was recognized and it was said at page 73, respecting the principal and sureties on the replevin bond, "it was their duty, upon the rendition of the judgment for a return, to see that the property was restored to the plaintiff in like good order and condition as when taken. *Citizens' National Bank* v. *Oldham*, 136 Mass. 515, 517. The plaintiff is entitled to the fair market value of the property in that order and condition as of the time when it should have been delivered to him, that is, on the date of the final judgment in the replevin suit. *Swift* v. *Barnes*, 16 Pick. 194. *Leighton* v. *Brown*, 98 Mass. 515. *Stevens* v. *Tuite*, 104 Mass. 328."

The case at bar comes within the principle declared and applied in *Parker* v. *Simonds*, 8 Met. 205, *Stevens* v. *Tuite*, 104 Mass. 328, and *Citizens' National Bank* v. *Oldham*, 136 Mass. 515. The master's report means that the value of the trucks had depreciated between the time when they were replevied and the time of the rendition of final judgment, to the extent of $1,000. This loss is not damages arising from detention and hence under the authority

of *Citizens' National Bank* v. *Oldham,* could not have been re-covered in the replevin action. It is damages arising from failure to comply with the condition of the replevin bond, viz., "to see that the property was restored to the plaintiff in like good order and condition as when taken." *Maguire* v. *Pan-American Amusement Co. supra,* at page 73.

It follows that the decree must be reversed and a decree en-tered for the plaintiff in the sum of $4,120.52 with interest from February 7, 1921, with costs as taxed in the Superior Court and costs of this appeal.

*So ordered.*