## OKLAHOMA CITY v. PAGE.

No. 19922.    Opinion Filed Dec. 8, 1931.

A. L. Hull and M. W. McKenzie, for plaintiff in error.

Twyford & Smith, for defendant in error.

SWINDALL, J. The petition in the action was filed August 21, 1919, and in it the plaintiff alleged that the defendant was committing a nuisance by the discharge of unpurified sewage into the North Canadian river at Oklahoma City to the damage of the plaintiff, who was a riparian proprietor. The principal complaint was as to the discharge from the larger of two outlets, that had been in use about a year prior to the filing of the petition. The plaintiff alleged that her land had agricultural value, was valuable as a residence, and had peculiar value for platting and sale as residential lots because of its proximity to Oklahoma City. She alleged that the nuisance rendered the premises unfit for a home, made it impossible to keep tenants in the tenant· houses, destroyed the usable value of the land, and destroyed the value for platting and sale. She alleged that by the nuisance the value of the premises was reduced from $500 an acre to $100 an acre, and that the conduct of the defendant constituted a taking and damaging of her property within the meaning of section 24 of article 2 of the state Constitution. She prayed for damages in the sum of $48,000, which was the alleged depreciation per acre multiplied by the acreage which she claimed to own, 120 acres.

The judgment on the first trial was for the defendant, but it was reversed in an opinion reported in 129 Okla. 28, 263 Pac. 448, in which it was held that the plaintiff had stated a cause of action and was entitled to compensation for such damage as she could prove she had sustained, whether temporary or permanent, and the opinion repudiated the idea that if she had contended the nuisance to be permanent, she could not recover if it was temporary. In commenting on the character of the nuisance it was said that it appeared to be permanent, because it could not be known when, if ever, the city would abate it.

In a recent opinion, in Oklahoma City v. West, No. 21070 (decided Nov. 10, 1931), 155 Okla. _____, 7 P. (2d) 888, we approved that part of the former opinion relating to the right to recover for all damages sustained, and disapproved that part that indicated that the nuisance should be considered permanent. We feel that any-

thing in the former opinion in this case that indicated that the nuisance should be held permanent was invited by erroneous positions taken by the parties. The plaintiff was complaining of a common-law tort, and of conduct that is still a common-law tort, and we fail to see any necessity of alleging that the conduct of the defendants constituted a taking and damaging of her property under the constitutional provision. That allegation (notwithstanding another allegation that the conduct was unlawful) was well calculated to indicate a doing of what was considered as authorized and was, therefore, to be considered permanent. On the other hand, although the city contended that the nuisance was temporary, it contended that in the action permanent damages could not be recovered, and if the court conceived the damages to be permanent, there would be a tendency to hold that, since they must be recoverable, the nuisance was permanent.

Although in an action for a temporary nuisance there can be no assessment of damages upon the theory that the nuisance is permanent, because that would permit a recovery for what has not been done and what it cannot be considered will be done, it does not follow that if permanent damage has actually been sustained from a temporary nuisance and is not conditioned upon future conduct, recovery for it can be denied.

Upon the second trial the defendant still contended that the nuisance was temporary, and still contended that in an action upon a temporary nuisance "permanent damages" were not recoverable. In our opinion a traverse of the damages was the proper move, rather than a denial that they could be recovered, for the possibility that they had been sustained could not be denied, and if they had been suffered, recovery must follow. However, the defendant did much more than that. On May 24, 1928, the day on which the second trial was held, which resulted in a judgment for the plaintiff for $10,000, from which this appeal is taken, the defendant filed a second amended answer. That was nearly nine years after the filing of the petition and nearly ten years after the beginning of the discharge from the larger sewer outlet. Apparently desiring to overcome the idea that the nuisance should be considered permanent because it could not be known when, if ever, the city would abate it, the city alleged that it had abated it. But it did not stop at that. It alleged the date of the claimed abatement, "November, ____, 1927," which was only about six months prior to the filing of the answer. It also denied that there had been any depreciation in the usable value or in the "real permanent value" of the premises either up to the filing of the petition, or even to the time the second amended answer was filed, and alleged that when the second amended answer was filed the premises were more valuable than before and that the increased value was due to proximity to the city, and that any inconvenience or annoyance to the plaintiff was due solely to the premises being in proximity to the growing city.

The plaintiff replied denying abatement, again alleging a taking and damaging, and alleging that even if the nuisance should be abated it would not restore any of the alleged depreciation in value because it had already become permanent and irremedial.

A motion to require the plaintiff to elect whether to sue for "temporary or permanent damages" was overruled. The plaintiff proved the commission of the nuisance, introduced evidence to prove that upon its commission the property had been seriously reduced in market value, and introduced evidence as to what damage had in fact been done to the premises and what effect the nuisance had upon the use of the premises for agricultural purposes and as a home, and she introduced evidence to the effect that the nuisance was still being continued. The defendant introduced evidence as to the abatement. The plaintiff then introduced evidence to prove that if the nuisance should be abated it would not restore any of the depreciation in market value, the most conservative evidence upon that point being that it would restore little, if any, of the depreciation. The plaintiff had not only introduced evidence as to a difference in market value before the commission of the nuisance and immediately upon its inception by the discharge of the largest outlet (the depreciation at that time, of course, being then as a matter of law conditioned on continuance of the wrong), but she had also introduced evidence that during the continuance of the nuisance the premises and the section of the city in which they are situated, had been rendered by the nuisance undesirable as residence property and that the section had become populated by colored people living in huts. It was this change of condition that was given in the plaintiff's rebuttal evidence as a reason why abatement of the nuisance would not restore any, or in any event, very little, of the depreciation in market value of the premises, making depreciation as to that element of value permanent.

A permanent depreciation in market value would not be instantaneously caused by the nuisance, and it is very doubtful if the difference testified to as existing at the time of filing the petition was not conditioned on future, as well as past, wrong, but that is immaterial now, because it was clearly proved at the second trial that the depreciation had then become permanent. The city objected to the admission of any evidence of continuation of the nuisance, or its effect, or value, subsequent to the filing of the petition, and upon the objection being overruled, requested a continuance to give it time to prepare to meet such evidence, which was refused upon the ground that the issues had been tendered by the city itself in the answer.

The verdict was a conservative allowance even considered as an allowance only for depreciation shown by the evidence as to one item, loss of value for platting and sale, a depreciation that the evidence showed to be permanent.

The petition indicates that the plaintiff considered the nuisance to be permanent, although she contended that she had the right to recover both difference in market value and loss of usable value, such as loss of use as a residence and inability to keep tenant farmers on the place, an unsound contention had the nuisance been permanent, for in such case, while there can be recovery for those elements, all such damages should be reflected in an allowed difference in market value, because the idea of permanency of the cause and permitting only one action forces such a result.

(1) The city still contends that the nuisance was temporary, and that notwithstanding the former opinion the rights of the parties should be adjudicated upon the theory that it was a temporary nuisance, and it cites several cases where to effect justice the court has upon a second appeal abandoned a position taken by it upon a former appeal. We hold the nuisance to be temporary. Oklahoma City v. West, supra, and cases cited therein. But there is so much more to the case than determining the character of the nuisance, for the contentions which the city premises upon it are unsound.

(2) The first complaint is for not requiring the plaintiff to elect whether to claim "temporary or permanent damages," and immediately appears confusion difficult to unscramble, caused by using ambiguous expressions instead of considering what meanings the expression might have, then considering what bearing the different ideas might have with reference to a temporary nuisance. A nuisance should be called "nuisance" instead of "damage." "Injury" is often used in a lay sense as meaning "damage," but in a legal sense it means "wrong." Injury is a wrong, and damage is the result. Nuisance is a wrong, and damage is the result. "Damages" may indicate a plural effect, but to express that it is usual to use only the singular "damage," and "damages" is usually used to express the compensation for damage or damages done. There is a radical difference between the damages recoverable for a temporary nuisance and those recoverable for a permanent nuisance, and that follows from the extent of the tort. If the nuisance is temporary, damages can only be recovered for what has been done; on the other hand, if the nuisance is to be considered permanent, since the law will not permit successive recoveries for the same tort, it is necessary to sue for and to claim compensation for all damage, not only that caused by what has already been committed, but also, though often difficult to assess, what will be suffered by what will be committed in the future. In one case we consider only past conduct; and in the other, both past and prospective conduct. Undertaking to express the rule turning upon whether the wrong (a cause of damage) is merely past or is past and prospective, temporary or permanent, in terms of damage (result), or damages (compensation), saying that for a temporary nuisance only temporary damages can be recovered, and that only for a permanent nuisance can permanent damages be recovered, causes dire confusion, for the most cursory consideration indicates the fallacy that in dealing with cause in terms of mere character of result or an arbitrary measure of recovery that might not compensate involves us in a declaration that a temporary cause can produce only a temporary effect and only a permanent cause can make permanent effect, or in a contention that would deny full compensation for the permanent effect of a temporary cause. Total destruction may be caused in a flash. And in a flash a damage may be inflicted that is anything but temporary. By using the expressions we attempt to define the kind of nuisance by the kind of damage done, and the attempt not only fails, but it confuses the situation because there is damage that is termed temporary, that which ceases upon abatement of the nuisance, and damage that is termed permanent, an effect which the abatement of the nuisance will not abate, and there is no rule of law, logic,

or physics that makes the kind of damage, the effect, depend for permanency on permanency of cause. The defendant cited several cases which announced the rule to be that for a temporary nuisance the measure of damages is the usable value of the premises during the continuance of the nuisance, and that the difference in the market value of the premises before and after the commission of the nuisance is not the proper measure of damages, this latter measure being the measure for damage caused and to be caused by a permanent nuisance. It is true that for a permanent nuisance the measure of compensation is one sum for all damage, and the allowance is whatever difference in market value results from a consideration of all of the damage, but it does not follow that a difference in market value cannot be a proper measure of recovery for damage done by a temporary nuisance, so far as such a difference has actually resulted, solely from what has already been done, and is not required to be at all conditional upon a further continuance of the tortious conduct. While for a temporary nuisance there can only be a recovery for the wrong already committed, that in no manner denies recovery for damage that has resulted in depreciation in value not dependent upon prospective cause. Those cases indicate nothing except that there had not there been a difference in market value independently of continuance of the wrong, so it could not be compensated because not sustained. The defendant lays special stress on Ardmore v. Orr, 35 Okla. 305, 129 Pac. 867, in which the rule was announced that the measure of damages was the value of the lost use, and not a difference in market value. The opinion indicates clearly that the court did not intend to hold that a temporary nuisance could not cause permanent damages, nor to hold that if it had there could not be a recovery of difference in market value thereby caused. Throughout the opinion it was asserted that for a temporary nuisance there could be a recovery for all wrong already done, but no recovery for damage conditioned upon prospective wrong. A part of the opinion, considered abstractly, might tend to the conclusion claimed by the defendant. That part is the following:

"To permit the plaintiff to recover for **future loss,** which will not occur if the defects in the construction of said sewer are corrected, would be unjust to that city. On the other hand, to measure plaintiff's damages by only the depreciation in the value of his property that has occurred up to this time, **when subsequent overflow may have the result to entirely destroy the value of** **his property,** for which no action would lie to recover for such injury, because barred by the present action, would make the establishment of plaintiff's damages in the instant case a hazardous undertaking to him."

The difference in market value referred to had been defined, as a difference conditioned on future wrong, not only in effect in the first sentence above, but also in an earlier sentence, as follows:

"There is also evidence that because of the overflow and **the probability of subsequent overflows** the property has depreciated in value, the exact amount of which is not established by the evidence."

The court had already not only said that there could be a recovery for what had been done in the case of a temporary nuisance, but also that there could be no recovery for what had not yet been done except where the nuisance was permanent. Then it went on and stated that there the depreciation was conditioned upon continuance of the wrong, so that recovery could not be permitted unless the nuisance was permanent, and the two sentences first quoted state two good reasons why it should not be considered permanent, because it would require the defendant to pay damages not only for what had been done, but as well for what had not been done and might never be done, which was unfair to the defendant, and it would require conjecture as to the extent of damage that would be done; if any, by future conduct, a hazardous undertaking which would be unfair to the plaintiff. The case only held that for a temporary nuisance there could not be recovery of a difference in market value which had not been caused but was required to be conditioned on future wrong, and that was all that was held, while on the other hand it was said over and over again in the opinion that the difference between the two theories of recovery was that for a temporary nuisance there could be recovery for what had been done, while for a permanent nuisance there could also be recovery for what would be done.

It would be idle to contend that a temporary cause cannot effect a depreciation in market value due solely to what has been done, and in no manner conditioned upon future conduct, and if recovery cannot be had in an action instituted after the commission of the wrong causing it, when can it be recovered? It certainly could not be recovered in an action brought after rendition of judgment in an action instituted after commission of the act causing it, for it would be a complete answer to say that

the damage had been done by an act for which there had been an action and a judgment.

In Oklahoma City v. Stewart, 76 Okla. 211, 184 Pac. 779, a case where surface water had been collected and discharged in a body upon the plaintiff's land, damaging the walls of a building and depositing large quantities of sand and debris upon the lots, this court approved an instruction permitting the recovery of permanent damages:

"The plaintiffs in the case at bar were only permitted to recover under the instructions, first, what it would cost to repair the building; second, the damage to the lots, which was the difference in market value immediately before and immediately after the injury, said damage being caused by the sand and debris being deposited on said lots by the water flowing over their land. This instruction would permit the plaintiffs to recover only the actual damages suffered."

No contention was made against the right to recover for the deposit upon the lots as a permanent damage, or to difference in market value as the proper measure of damages.

And in Comar Oil Co. v. Hackney, 119 Okla. 285, 250 Pac. 93, a case of pollution of a stream, it was expressly held that for permanent damage actually sustained from a temporary nuisance there could be recovery, and it was said in that case that:

"Whether the source or cause of permanent damages under the paragraphs, supra, may be susceptible of remedy or abatement by the expenditure of labor or money, the damages to the realty are permanent if the injuries to the lands themselves are not susceptible of abatement or remedy by the expenditure of labor or money."

There the court squarely held that if the damage done was permanent, in that the damage could not be abated, it would be held to be permanent and recovery would be allowed for it as permanent. And the opinion quoted from Mid-Co. Gasoline Co. v. Back, 95 Okla. 29, 217 Pac. 1041, which was an action for a nuisance by which land was injured by an overflow of crude oil, in which the third syllabus paragraph reads as follows:

"Although the source of plaintiff's damages may be susceptible of remedy or abatement, a requested instruction limiting the amount of the plaintiff's recovery to such damage as has accrued on account of the impaired or lost use of his property up to the time of the suit is properly refused by the trial court in the absence of any evidence that the injury complained of is susceptible of remedy or abatement."

Here we find the word "injury" used in the sense of "damage," but the holding is clear.

(3) There is one other angle to this matter of election. The defendant may have meant that the plaintiff should have been required to elect whether to consider the nuisance as temporary or permanent, as the motion mentioned a difference in the theory on which the petition would be "pitched," whether for "temporary damages or permanent damages." The cases cited by the defendant are not in point, because in those cases there were two rights, the party being entitled to enforce either, but not both. Here there could be no election, for the defendant properly contended that the nuisance was temporary and refused to permit it to be held to be permanent. Also, it was a temporary nuisance as a matter of law. Therefore, the motion was merely a motion to require the plaintiff to guess in advance of the trial whether her cause of action was for a temporary nuisance or for a permanent nuisance, and to make the guess under a claim that if she made the wrong guess she could recover nothing, so that if she considered it permanent she would recover nothing if it should be a temporary nuisance even though in any event she would have to prove the past wrong and its effect. That would prevent a decision upon the merits of the controversy. If a petition states a cause of action, the petition is not demurrable, notwithstanding a prayer for relief to which the party is not entitled. If a petition states a cause of action and also contains immaterial allegations, they are properly reached by motion to strike them from the petition. If a nuisance is temporary as a matter of law, any allegation of damage apparently conditioned upon prospective wrong can be stricken on motion. If the character of the nuisance is an issue of fact under the pleadings, the situation must be met by instructions that are proper under the evidence. These matters are too elementary to require the citation of authorities, and they seem adequate to cover the various situations.

The contention of the defendant does not seem to be sound. At any rate, it is not sustained by the two cases cited by the defendant, which were cases of election. If the contention is sound, it must be upon some theory not advanced on this appeal and apparently not advanced on the former appeal. There have been instances of election as to the character of the nuisance, but in those both parties were competent to agree, and did agree, to consider it as temporary or permanent. Also, if a party re-

covers upon the theory that a nuisance is permanent, there cannot be a subsequent recovery, but there he is bound by the doctrine of res adjudicata, having sustained a contention that is wholly incompatible with the position later taken, and in legal theory having recovered damages for that for which he again sues. So, we can have a case of election, in the sense of agreement, and exercise of foresight, and an instance of res adjudicata, a case of hindsight which sometimes evidences lack of foresight, but a plaintiff who has alleged a cause of action is not required to prophesy as a condition of recovering for what she has alleged and may prove.

(4) The defendant complains of error in refusing to submit to the jury a special interrogatory as to whether the nuisance was temporary or permanent in character. The nuisance was temporary in character as a matter of law. Oklahoma City v. West, supra.

(5) The defendant also complains of the refusal to give certain requested instructions and of the instructions that were given. One instruction requested was for a verdict for the defendant, and the contention that refusing it was erroneous is based upon the contention that in an action for temporary nuisance permanent damages cannot be recovered. The refusal was proper. That is also true of an instruction that if the nuisance had been abated the verdict should be for the defendant. Another instruction that was refused was one to the effect that if the nuisance had been abated the plaintiff could only recover damages sustained up to the date of the filing of the petition. The request ignored the issues gratuitously tendered by the city. The next two instructions were definitions, one defining a temporary nuisance as one abatable by the expenditure of money or labor, and the other defining a permanent nuisance as one not so abatable. The instructions given conceded the nuisance to be so abatable, and as will be seen, it is beyond doubt that the verdict was rendered upon the theory that the nuisance was temporary.

The court was asked to instruct the jury that the defendant had the right to discharge its sewage into the river. The instruction was properly refused because it was misleading in that it failed to qualify the right by denying the right to so commit a nuisance.

The court was also asked to instruct the jury that if they found for the plaintiff they could not take into consideration in assessing the damages and personal inconvenience or annoyance suffered by tenants of the plaintiff proximately resulting from any wrong of the defendant. The jury could not assess and allow damages for that annoyance and inconvenience as such, but it does not follow that they could not take it into consideration in assessing the plaintiff's damages. The annoyance and inconvenience had a bearing on alleged loss of use. The refusal was proper.

A consideration of the verdict indicates that there was no duplication of damages. The market value of the plaintiff's premises was due to different elements, th+ elements arising from difference in utility. The premises were useful as a home for the plaintiff; they were useful for agricultural purposes; and because of their proximity to the city they would have utility as homes for others, which made them valuable for platting and sale as lots. The evidence clearly discloses that the plaintiff had suffered a permanent depreciation in market value for platting and sale, a depreciation in that one element of value, which conservatively was in excess of the amount of the verdict. From this it results that if the jury did allow anything for loss of use of the premises as a residence for the plaintiff herself, or for agricultural purposes, it was not a duplication as to those elements of damage, and anyway the allowance was more than offset by allowing less for permanent depreciation in market value because of the effect on the element of value due to utility for platting and sale as lots than they should have allowed under clear, cogent, and undisputed evidence. Also the allowances had to do with different utilities.

Bearing that fact in mind, we can consider the alleged errors in the instructions actually given by the court. In the first place, it is to be observed that the court permitted the jury to assess damages upon the theory that the nuisance was permanent or upon the theory that it was temporary. That was error, but it was in line with the opinion on the appeal from the first judgment, and by it the defendant was not injured, for it is clear that the jury did not assess damages upon the theory that the nuisance was permanent. The undisputed evidence as to a difference in market value caused by the mere commission of the nuisance, the market value immediately before the beginning of the discharge and immediately afterwards, was undisputed, and it clearly would entitle the plaintiff to a verdict as for a permanent nuisance so much in excess of the one returned that we can only

conclude that they reduced that difference in market value by an undue allowance for anticipated appreciation in market value es. timated upon the basis of abatement.

Comparing the evidence with the verdict, it could not be contended that the jury assessed damages for both a permanent and a temporary nuisance, and as said above, it is clear that they assessed the damages solely on the theory that the nuisance was temporary.

The part of the instructions with reference to assessment upon the basis of a temporary nuisance follows the instruction permitting recovery of immediate difference in market value which they were authorized to allow if the nuisance was permanent, and this latter part of the instructions was as follows:

"However, if you find and believe from the evidence that the new work completed by the city in November, 1927, and any. repairs or additions thereto that may be made will serve to abate or diminish the damage to the land of plaintiff, you may then take into consideration, in arriving at your verdict, the amount of damage which you find under the evidence the plaintiff sustained during the time elapsing between October 3, 1918, and the abatement of the nuisance, if you find it has been or will be abated, and in addition thereto, the difference between the value of the same at the present time, less the increase in value, if any, by any abatement claimed and proven to your satisfaction by reason of the city having instituted a new system of sewage."

The defendant complains that even this latter instruction is so framed as to permit a double assessment, and it evidently would, for it permits allowance for damages that had been suffered, and even damages that would be suffered, up to the time that the nuisance had been, or would be, abated, by the new work, or by alterations or additions that might be made, and in addition to that it permits recovery of a difference between the value 'of the premises prior to the commission of the nuisance, and the market value of the premises at the date of the second trial, less any appreciation due to abatement of the nuisance. Manifestly, there could be permanent damage and temporary damage, and the mere fact that the instruction would permit recovery of both would not be objectionable, but permitting double recovery for the same item of damage would be error. Permitting recovery of usable value and then permitting the same loss of use to reflect itself in difference in market value would be a double recovery for the same loss of use. But

while the instruction might have permitted that, it is clear that there was no double assessment. It can no more be contended that there cannot be temporary and permanent damages recoverable in the same action, if both have occurred, than it can be contended that for a temporary nuisance permanent damages could not be recovered. Suppose that the land in the Stewart Case, supra, had been agricultural land, that it had been so damaged by the deposit of sand that it was rendered substantially less productive, and thereby the market value of the land had been reduced, and suppose that the following year another flood destroyed growing crops on the land. Both losses would be recoverable in an action brought after destruction of the crops, and damages could be recovered for both. Or suppose that by one flood there had been a deposit on low land that depreciated it, but that the damage to the higher land merely destroyed the growing crop. Likewise, in the present case, there could be a depreciation in value that would practically eliminate the part of the market value that was due to utility for platting and sale, and yet the premises would have agricultural value. In fact that was the substance of what was proved. And the plaintiff could recover the difference in market value due to the loss or depreciation of value due to the one utility, and damages for loss of use for another utility. The plaintiff could have recovered for loss of use for agricultural purposes, loss of use for her own residential purposes, all temporary in character, and at the same time could recover for a difference in market value by reduction due to effect on the other utility rendering the market value less for platting and sale. We agree that there should have been a definition of temporary and permanent damage, and we can concur with the cases cited by the defendant which held judgments to be reversible for errors in instructions given or for failure to give proper instructions. However, the difference is that in those cases the party was injured by what the court did or by what it failed to do, whereas here the defendant was not injured. In this case the plaintiff was entitled to recover for the damages that had actually been suffered by the temporary nuisance, and the case differed from the usual case where recovery is only permitted for acts done prior to the filing of the petition, because the city brought into issue sub. sequent conduct and the effect up to the time of the trial from the judgment in which this appeal is taken. A judgment for the plaintiff could be pleaded in bar of any dam-

ages claimed to have been sustained prior to the second trial, but not in bar of any damages sustained after the date of the second trial, should the plaintiff institute another action. But so far as damages sustained prior to the date of the second trial are concerned, we are met by a situation in which what was allowed her is no more, and clearly even less, than she would have been entitled to recover for damages actually sustained, so that the recovery was not more than upon any view it was required to be, and we are met also by another situation, and that is that while the instructions might have permitted a duplication of assessment, as said above, there could have been none that injured the defendant. If the jury allowed nothing for loss of use because of some other utility that the premises possessed, then the plaintiff must lose it, because she did not file a cross-appeal. If they did allow something for loss of such utility, then the jury allowed less for depreciation in market value than the evidence required them to allow, and the plaintiff must be content with that loss, because she filed no cross-appeal. Since under any view of the damages caused by the temporary nuisance the plaintiff was entitled to recover all that the jury allowed, the defendant could not have been injured by the error so far as a right to recover or the amount of the verdict are concerned. Harlow's Digest, vol. 1, Appeal and Error, sections 265, 266, pp. 252, 253, and cases cited. Bobbs-Merrill Digest, Appeal and Error, section 645, and cases cited.

(6) The defendant urges one other argument, however, and that is that in the event of another action it cannot plead this judgment as res adjudicata. Why not? The nuisance was temporary, and the plaintiff has recovered for all damages sustained to the date of the second trial. If the nuisance was continued after that date and she sues again, it will necessarily be for damages sustained after the date of the second trial and within the period of limitations preceding the filing of the next petition, should the defendant decide to hold her within that period. The most that the defendant can urge is that the amount of that damage would be the subject of proof and that to assist in the determination of the issues the present verdict is not as specific as it wishes it was. If the defendant wished a finding as to the value of the premises prior to the commission of the nuisance, a fixing of the amount of damages allowed for temporary loss of use, a finding of the value of the premises at the date of the second trial, and the amount assessed for difference in market value, and for what elements of value allowed, it could have requested special findings by the jury. Section 552, C. O. S. 1921. A refusal to require proper requested findings would be material error. Oklahoma City v. Hill et al., 4 Okla. 521, 46 Pac. 568. Wherever there are multiple issues of damage and a party desires a judgment to be res adjudicata as to more than the cause of action as an entirety, such procedure is necessary, and if it is not followed, it is the fault of the party and not for lack of right.

(7) Due to the allegation that the conduct was a taking and damaging of property within the meaning of the constitutional provisions, we have been required to wade through page after page of the briefs having to do with the theory of the measure of damages in eminent domain and in what the defendant claims it differs from the theory of measure of damages for a temporary nuisance and from the measure of damages for a permanent nuisance. We disregard all of that. We consider the suit as one for a common-law tort, what is still a common-law tort, with a right to recover for such damage as can be proved to have been done by maintenance prior to the filing of the second amended answer, assessable under the rules of law governing assessment of damages for the tort.

We cannot but feel that to reverse the judgment of the trial court in litigation that has been now pending for more than 12 years, in which it is clear from the record, as said above, that upon any view of the law and the evidence that the plaintiff received a verdict and judgment for no more than she had clearly proved herself entitled to receive as compensation for the damages sustained to May 24, 1928, the date of the second trial, would be a denial of justice.

Judgment affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. RILEY, J., dissents.

Note.—See under (2) 20 R. C. L. 465-467; R. C. L. Perm. Supp. pp. 4913, 4914. (5) 14 R. C. L. 815, 816; R. C. L. Perm. Supp. p. 3682; R. C. L. Pocket Part, title "Instructions, § 74.