## CITY OF STILLWATER v. CUNDIFF.

No. 28787. Feb. 28, 1939.

George R. Taylor, for plaintiff in error.

Stanley D. Belden, for defendant in error.

PER CURIAM. The parties will be referred to as they appeared in the trial court. Plaintiff is the owner of the west half of the northeast quarter of a section of land in Payne county, Okla. The defendant has drilled a series of six wells on the southeast quarter of the quarter section so that the six wells are on the 40 acres of land just east of the 80 acres owned by the plaintiff and just across from the south 40 acres of the plaintiff's land. From these wells the city of Stillwater obtained its water supply which was being sold for the consumption of its citizens.

Plaintiff first filed a petition for injunctive relief. After the defendant filed an answer admitting the drilling of the wells and the use of the water as alleged, plaintiff amended his petition and therein alleged that prior to the drilling of the wells the land was worth $10,000; that the drilling of the wells rendered the land dry and barren and absolutely of no value and prayed permanent damages of $10,000. Defendant answered that it was not responsible for the failure of the water supply on plaintiff's land, and pleaded specially

that if the plaintiff had developed his land for water by drilling the wells deeper, plaintiff would have a sufficient water supply.

Commissioners were appointed who qualified and made their report fixing the damage to the plaintiff at $500. Neither the plaintiff nor the defendant being satisfied with the report of commissioners, a jury was called and after a verdict for $1,250 judgment was entered for the plaintiff in this amount.

Defendant first alleged that there is no competent evidence of permanent injury. It will be noted that the allegations of the amended petition are that the value of the 80 acres had been completely destroyed. The plaintiff testified that except for the improvements of approximately $3,000 in value the land was worthless. Several witnesses for the plaintiff testified that before the wells were drilled the land was worth $10,000 and that after the wells were drilled the land was not worth over $2,500.

There were two wells at the house that were used for the house and the surrounding premises. One was a pitcher pump well 24 feet deep. The other was about 75 feet from the house and was 26 feet deep. Plaintiff testified that these were almost totally dried up; that only three gallons of water could be secured by pumping the well at the house and only six gallons could be obtained from pumping the one in the yard; that the creek had always been fed by springs that boiled up from the surface and two of these springs were especially large. This creek is referred to as Golden creek; that both of these large spring* had dried up. The garden had burned up because of lack of moisture and some of the trees had died. He, when questioned, declined to estimate the number of dead trees, stating that he had not counted them. Other witnesses corroborated the testimony of plaintiff. One witness, who was a well driller, stated that he had been in the neighborhood since 1889 and had crossed the creek and camped on the bank in 1882 and that up until 1937 Golden creek had always been a running creek. He described it in 1937 as "dry as a powder horn." He had dug a number of wells all up and down the creek in this area and classified the water as sheet or percolating water. He detailed how he, once at the instance of the city authorities, deepened one of the neighborhood wells after the wells of the city of Stillwater were drilled. He said it was impractical to deepen the wells because of 40 to 50 foot red layer commonly referred to as "red bed" and stated that no water had been found in these red beds or below them by him in all of his experience of digging wells in this neighborhood.

Plaintiff did not attempt to estimate the damage to the trees or garden, or the wells as separate items of damages, but relied upon the permanent damages to the premises by reason of the drilling of these wells. The city engineer testified that there were five pumping wells drilled and one well that was not pumped. These wells were somewhat below the level of Golden creek and the two wells referred to above. An engineering instructor and dean of the college at A. and M., called on behalf of the defendant, admitted that if the water in the creek and in plaintiff's wells was percolating or sheet water in the same area as the wells of defendant city, then the pumping of the wells by the defendant would lower the water level of plaintiff's wells and the creek. He further stated that if the water level in the defendant's wells was pumped until it was lowered below the level of the creek, it would dry up the creek.

We hold that there is competent evidence of permanent injury. Where a municipality drills wells on land adjacent to another property owner and proceeds to pump the water for sale to its citizens and, in so doing, causes the wells or water supply of the adjacent land to dry up or fail, the resulting damage is permanent. Canada v. City of Shawnee, 179 Okla. 53, 64 P.2d 694; Clinchfield Coal Co. v. Compton, 148 Va. 437, 139 S. E. 308; Rouse v. City of Kinston, 188 N. C. 1, 123 S. E. 482.

The rule especially applicable to a person or corporation engaged in the production of water from adjacent premises for commercial purposes is discussed exhaustively in Canada v. City of Shawnee, supra. There we were considering the result of the digging of a number of wells as in the case at bar. Therein we said:

"The English or common-law rule concerning rights in percolating waters was first announced in the case of Acton v. Blundell (1843), 12 Mees & W. 324, 152 Eng. Reprint 1223, 15 Mor. Min. Rep. 168. It is in effect in probably the majority of American states today. The rule is that rights in percolating waters are regarded as belonging to the owner of the freehold, like the rocks, soil, and mineral found there, and that such owner may, in the absence of malice, intercept, impede, and appropriate such waters while they are upon or beneath his premises, and make whatever use of them he pleases, regard-

less of the fact that his use cuts off the flow of such waters to adjoining land and deprives the adjoining landowner of their use.

"At an early day, however, the courts expressed dissatisfaction with the common-law or English rule, and began applying what they called, variously, the rule of 'reasonable use' or rule of 'correlative rights,' or the American rule * * *

"Stated generally, the rule of reasonable use is that each landowner is restricted to a reasonable exercise of his own rights and a reasonable use of his own property, in view of the similar rights of others."

After discussing the applicability of the facts involved, we said:

"It clearly appears from the cases that the American rule is used merely as a check upon the unreasonable use of the English rule: that few if any cases can be found where American courts have denied a landowner the right to draw as much percolating water from under his land as he needs, even though it hurts his neighbor, so long as the use to which he puts it bears some reasonable relationship to the natural use of his land, and even though such use of the land be industrial and not agricultural. But the majority of recent decisions stop short at and forbid the harmful extraction of percolating water for sale at a distance. As stated in the annotation at 55 A. L. R. 1404: 'Practically all the cases in which this rule of correlative rights or reasonable use has been applied were cases in which percolating water was being extracted from land for the purpose of sale at a distance, for use in supplying water to cities and towns, or in irrigating other lands than those in which such water was found. This was held to be an unreasonable use of percolating water, which violated the rights of adjoining or adjacent landowners.' "

As to the nature of damages this court said:

"The overwhelming weight of the evidence was that the injury thereby inflicted upon plaintiff was very real, substantial, and irreparable."

In Rouse v. City of Kinston, supra, the third paragraph of the syllabus is as follows:

"Measure of damages to land whose wells became dry by reason of sinking of wells on other land is difference in value between land immediately prior to sinking of wells and immediately subsequent thereto."

One of the rules established by this court in a well-defined line of authorities is that

the damage to realty is permanent when the cause of the damage cannot be abated. Twin State Oil Co. v. Long, 170 Okla. 413, 40 P.2d 650. To the same effect see Ponca City Mills Co. v. Krow, 131 Okla. 98, 267 P. 629; City of Ardmore v. Orr, 35 Okla. 305, 129 P. 867; Pulaski Oil Co. v. Edwards, 92 Okla. 56, 217 P. 876; Oklahoma Ry. Co. v. Woods, 164 Okla. 215, 23 P.2d 217. The defendant city purchased the land for the express purpose of procuring water for the purpose of conveying the water to the city. It constructed a pipe line nine miles long buried below freezing depth. It drilled six deep wells, five of which were pumping at the time of the trial. We hold that the rule of permanent damage applies. The defendant city offered evidence to show the need of the wells drilled and in its answer tendered the issue of eminent domain to have the damages assessed. There is no need of citing authorities to this effect other than the supplemental opinion in Canada v. City of Shawnee, supra, since in the case at bar the report of the appraisers was made and both parties requested a trial by jury after the report of the commissioners had been made. As pointed out above, plaintiff first filed his petition seeking injunctive relief, and when the defendant answered tendering the issue of eminent domain, plaintiff then filed the amended petition alleging that the land was worth $10,000 prior to the drilling of the wells and had been rendered worthless and of no value by the drilling of said wells.

It is next urged that there is no competent evidence that the drilling of the wells by the defendant city caused the injury. Six witnesses in addition to the plaintiff testified that prior to the spring of 1937 there had always been running water in Golden creek fed by springs that boiled up from the ground. Frank Eaton crossed the creek in 1882 and camped on its banks and later bought his homestead on it in 1889 and knew the surrounding territory well. He said it had never been dry prior to the drilling of the defendant's wells. W. B. Freeman crossed the creek before he bought his land in 1889 and testified it was running then and had never ceased to run until after the defendant's wells were drilled in 1937. We hold that there is competent evidence that the permanent damage was caused by the drilling of the wells by the defendant.

Defendant asserts that the records of the government disclose that the lack of rainfall was the determining cause of the dry-

ing up of the creek and the failure of the wells. Whether or not the drying up of the wells and the creek was caused by the failure of the rainfall or the drilling of the wells was a question of fact properly submitted to the jury.

It is urged that the amount of the verdict is excessive. As pointed out above, several witnesses testified that they had been acquainted with the premises for a long time, two or three of them since 1889; that the creek had always been a running stream, fed by springs, where fish abounded and the stock could water and a person could swim. The gardens dried up, trees died, two wells failed and the creek became dry. Witness fixed the value before the drilling of the wells at $10,000, and after the drilling of the wells at $2,500. We have examined the entire evidence and find that the verdict is not excessive.

Finally it is urged that the judgment is void for the reason that it is in conflict with the requirements of section 5977, O. S. 1931 (62 Okla. St. Ann. sec. 362). This is the sole authority cited by the defendant throughout the nine specifications of error. Obviously it is not in point. The section refers to the recovery in actions arising upon contract against a municipal subdivision of the state and is not applicable to cases seeking recovery for damages.

The judgment of the trial court is affirmed.

BAYLESS, C. J., and CORN, GIBSON, HURST, and DANNER, JJ., concur.