**DOUGLAS AIRCRAFT CO., Inc., v. KERNS et al.**

No. 3500.

Circuit Court of Appeals, Tenth Circuit.

Nov. 6, 1947.

1008

Homer Hurt and Robert E. Shelton, both of Oklahoma City, Okl., for appellant.

John Eberle, of Oklahoma City Okl. (Draper .Grigsby, of Oklahoma City, Okl., was with him on the brief), for appellees.

Before PHILLIPS, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The appellees, R. P. Kerns and Virginia Kerns, instituted this action against appellant, The Douglas Aircraft Company, to recover damages for the pollution of a stream during the period from October 13, 1943, to April 17, 1946. In their first cause of action, plaintiffs alleged that the nauseating, offensive, noxious and poisonous condition of the stream, caused by defendant's conduct, interfered with the comfort and enjoyment of plaintiffs' land to the extent of $5,000. In the second cause of action, plaintiffs alleged that the lands were valuable for platting and subdividing into lots and blocks and for sale as building sites for homes, and that due to the acts of the defendant, the lands have suffered permanent damages and depreciation for home sites to the injury of the plaintiffs in the amount of $20,000. The second cause of action also alleged that the lands were valuable as farm lands and that they were deprived of their use as such to the extent of $5,000. Trial was had to a jury. A motion for a directed verdict by Douglas was overruled, and both causes of action were submitted to the jury for its determination under the instructions of the court. The jury returned a verdict for the plaintiffs for $2,500 on the first cause of action, and for $5,000 on the second cause of action. A motion for a new trial was overruled and judgment was entered on the verdict, and this appeal followed. Plaintiffs will be re-

ferred to as such, and the defendant will be referred to as Douglas.

The plaintiffs own fifty-three and one-half acres of land traversed by the stream in question. Part of the land was used for agricultural purposes and part of it was used as a home for the parents of one of the plaintiffs. Other parts of the premises were used for recreational purposes. Picnic grounds, including a barbecue pit, had been constructed in proximity to the creek. Plaintiff, R. P. Kerns, was an insurance man and used the picnic grounds to entertain business associates and friends, and their children used the creek for wading purposes. The plant which Douglas operated was built and owned by the United States Government and was leased to Douglas for the manufacture of airplanes as a part of the Government war effort. The plant was operated by Douglas until April 17, 1946, when it was returned to the Government. A part of the plant consisted of a sewage disposal system. The industrial waste and effluent from the sewage disposal plant was permitted to flow into the creek during the time the plant was operated by Douglas. It was this operation which plaintiffs alleged caused the damages complained of.

Complaint is made of the refusal of the court to give instructions requested by Douglas, and of instructions given by the court. Douglas requested the following instruction set out as instruction "Q". "You are further instructed, Gentlemen of the Jury, that the court takes judicial notice of the scientific fact that sewage may be purified by proper treatment. However, the question of whether or not the sewage in this case was so properly treated is a question of fact for you gentlemen to determine and the court by this instruction is not endeavoring in any manner to express an opinion on this issue."

Instead of giving this instruction, the court gave the following instruction. "If you find under the instructions heretofore given you that defendant materially polluted the stream in question, and that damage to plaintiffs or their property directly and proximately resulted therefrom, it is no defense that the defendant had the best equipment available for the sewage disposal plant or that said plant was engaged in war work."

The Oklahoma Supreme Court, in effect, has said that a sewage disposal plant can be operated without creating a nuisance. In Oklahoma City v. West, 155 Okl. 63, 7 P.2d 888, 890, the court, speaking of a sewage disposal plant, said: "A nuisance of this character, by discharging pollution into a stream, is not caused by a so-called permanent structure, but is caused by the manner in which the structure is used."

Continuing further, the court said: "* * * that the real rationale of the decisions may in the future be fully apparent we announce that this court takes judicial notice of the fact that modern science has advanced to the point where sewage is capable of purification, and that it is not only capable of purification, but can be easily and successfully purified by the use of modern appliances."

The instruction which the court gave is vague and general and not of much assistance to the jury in understanding what constituted pollution of the stream from the operation of a sewage disposal plant. The jury might, from a consideration of this instruction alone, have gained the impression that the mere use of a stream for sewage disposal purposes, irrespective of the equipment used, constituted a nuisance and subjected Douglas to liability. The requested instruction was a proper one and had the substance thereof been given, it would, no doubt, have tended to clarify the instruction which the court gave. Considered alone there is some question as to the sufficiency of the instruction complained of, but it does not stand alone. In other instructions, the court informed the jury of a temporary or abatable nuisance, and as to the manner in which it could be abated. While, as stated, the instructions are general and lack that clarity which is desired as a guide to the jury, we are of the opinion that when the instructions are considered in their entirety, they were sufficient to guide the jury in its deliberations. We, therefore, conclude that there was no reversible error in refusing to give the requested instruction as far as the first cause of action was concerned.

1010

█ Douglas contends that in any event the award for temporary damages was grossly excessive and that no more than nominal damages should have been allowed. There was evidence that the odors from the stream were offensive; that the recreational grounds could not be used; and that there was discoloration to the stream. True, there was also evidence to the contrary. That raised a question for the jury, and we cannot say that its determination that a temporary nuisance existed was not supported by proper evidence. The argument that the amount for such damages was excessive is not without grounds for contention. But we cannot say that the amount thereof is so grossly excessive or unwarranted as to justify us in overturning the verdict of the jury and in substituting our judgment for theirs as to the proper amount of such damages.

█ A more serious question arises as to the verdict of the jury and the judgment thereon for permanent damages on the second cause of action. It is conceded that the nuisance complained of was a temporary or an abatable one. In such a case two causes of action may arise—one for temporary damages and another for permanent damages, if such result. In Oklahoma, both may be recovered in a single action.[1] The line of demarcation between temporary and permanent damages is not susceptible of exact delineation. Generally speaking, permanent damages are those that are, practically speaking, irremediable.[2] It is conceded that there was no physical visible damage to either the land or any of the buildings constituting real estate located thereon. No claim is made that the productivity of the soil was in any wise affected. The undisputed proof established that if the dumpage of the sewage ceased, as it now has, one good rain would clear the water and restore the stream to its former state. Thereafter there would be no odor, no discoloration of the water, no deleterious or obnoxious substance of any kind in the stream. In fact, there would be no visible or conscious evidence that anything had ever been wrong.

Plaintiffs relied for proof of permanent damages upon the testimony of their witness, Prewitt (a real estate man), who testified that the psychological effect of the temporary nuisance would linger on permanently and would permanently affect the value of the land. That the psychological effect of the existence at one time of a temporary abatable nuisance would constitute permanent injury to this real estate also seems to have been the view of the court, as is evidenced by its questions to the witness, Prewitt. This seems to be an entirely new theory as to what constitutes permanent injury to real estate resulting from an abatable nuisance. No case is cited to sustain such a theory, and an exhaustive search on our part has failed to reveal one, or even a case, in which such a theory has been advanced or discussed. 15 Am.Jur., Par. 109, p. 517, states the rule as follows: "In case of an injury of a permanent nature to real property the proper measure of damages is the diminution in the market value of the property by reason of that injury. * * * Permanency of injury is the proper test for the application of this rule; and therefore, it is obvious that to warrant its application *the act complained of must take a part of, or effect a lasting change in, the realty itself.*"[3]

Oklahoma has held that damage to real estate is permanent when the cause of damage cannot be abated.[4] It would be impossible to cite, let alone examine, all the cases dealing with the question of what constitutes permanent injury to real

[1] Oklahoma City v. Page, 153 Okl. 285, 6 P.2d 1033; Comar Oil Co. v. Hackney, 119 Okl. 285, 250 P. 93; Oklahoma City v. West, 155 Okl. 63, 7 P.2d 888; Oklahoma City v. Stewart, 76 Okl. 211, 184 P. 779; Herwig v. City of Guthrie, 182 Okl. 599, 78 P.2d 793.

[2] Union Oil & Mining Co. v. Bowman, 144 Okl. 54, 289 P. 296; Alesko v. Union Pacific R. Co., 62 Idaho 235, 109 P.2d 874; Worden v. Bielenberg, 119 Minn. 330, 138 N.W. 314; Texas Pacific Coal & Oil Co. v. Taylor, Tex.Civ.App., 47 S.W.2d 1110; 1 Am.Jur., Par. 119, p. 500, and cases cited; 25 C.J.S., Damages, § 84, and cases cited.

[3] Emphasis supplied.

[4] See Oklahoma R. Co. v. Woods, 164 Okl. 215, 23 P.2d 217, and cases there cited; City of Stillwater v. Cundiff, 184 Okl. 375, 87 P.2d 947.

estate. Space will not permit us to even list all the cases we have examined on this question. Suffice it to say that in each one of them, where damage was allowed for permanent injury, there was actual permanent injury to the real estate itself. We list only a few of the Oklahoma cases dealing with this question.[5] The case of Oklahoma City v. Page, 153 Okl. 285, 6 P. 2d 1033, may, upon first blush, seem to contradict this statement, but a careful analysis of the facts will show that it is in accord with the general rule. The evidence there showed that during the time the temporary nuisance, caused by the manner in which the sewage disposal plant was being operated, existed, the premises in question, as well as the surrounding section of the city, had been rendered undesirable as residence property and that that section of the city had become populated by colored people living in huts. This deterioration in the character of the residence property generally was permanent and was held to constitute a permanent change in the realty itself.

It is not necessary to decide whether the psychological effect of the existence of a nuisance may ever constitute permanent injury to real estate. It is sufficient to say that under the facts of this case the psychological effect of the existence of this temporary nuisance which has been or can be abated without permanent injury of any kind or nature whatsoever to the real estate itself can not be the basis for the recovery of permanent damages.

The weight of the evidence, is, of course, for the jury's determination and not for that of the court. But whether proffered evidence is competent, is a question of law for the court's determination. Under the uncontradicted competent evidence, it conclusively appears that no permanent injury was done to the real estate. Its appearance, the quality of the soil, and the character of the trees and the improvements were all unaffected and unchanged by the existence of the temporary nuisance. There was no evidence to submit to the jury on the question of permanent injury to the real estate under the second cause of action, and Douglas' motion for a directed verdict on the second cause of action should have been sustained.

It is difficult for us to see how on a new trial, under the admitted uncontroverted facts in the case, permanent injury to the real estate can be established. However, in the posture in which the case comes to us, we can do no more than reverse and remand with instructions to grant a new trial on the second cause of action seeking damages for permanent injury to real estate.[6]

The judgment of $2,500 on the first cause of action, is affirmed; and the judgment of the court of $5,000, on the second cause of action, is reversed, and as to it the case is remanded with directions to grant a new trial thereon as prayed for by Douglas.

It is so ordered.

---

[5] Oklahoma City v. Page, 153 Okl. 285, 6 P.2d 1033; Comar Oil Co. v. Hackney, 119 Okl. 285, 250 P. 93; Oklahoma City v. Stewart, 76 Okl. 211, 184 P. 779; Union Oil & Mining Co. v. Bowman, 144 Okl. 54, 289 P. 296; City of Stillwater v. Cundiff, 184 Okl. 375, 87 P.2d 947; Oklahoma R. Co. v. Woods, 164 Okl. 215, 23 P.2d 217; Argo Oil Co. v. Snouffer, 175 Okl. 382, 52 P.2d 803; Magnolia Petroleum Co. v. Norton, 189 Okl. 252, 116 P. 2d 893.

[6] See Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914D, 1029.
Remark. The Supreme Court has considered this question in two other cases —Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L. Ed. 1636, and Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177. An analysis of these three cases leads us to conclude that the disposition to be made on the reversal of the case is controlled by the Slocum case.