BOWLES et al. v. CITY OF ENID.

No. 34932. May 27, 1952.

Rehearing Denied June 24, 1952.

*245 P. 2d 730.*

J. Howard Lindley, Fairview, and France, Johnson, Gordon & Cook, Oklahoma City, for plaintiffs in error, Carrie Bowles, Jessie Nelson, and the Town of Ames.

Ted R. Fisher, Watonga, for plaintiff in error, Town of Okeene.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, and McKeever & McKeever, H. L. Gasaway, and McKnight & Edwards, Enid, for defendant in error.

O'NEAL, J. The city of Enid, a municipal corporation, filed its petition in the district court of Major county, alleging that under the laws of the state it is authorized to exercise the right of eminent domain for the purpose of acquiring a public water supply system to furnish water to the residents of the city of Enid. Thereafter, the judge of the district court appointed commissioners with instructions to inspect the property and water rights sought to be appropriated by the city and consider the injury that the owners will sustain by such appropriation of said easement and rights specifically described.

The commissioners' report was filed with the court which disclosed that the city of Enid has located a well on a square tract of land, consisting of one acre located in the southwest corner of the S.W.¼, section 10, township 20N., range 9W., I.M. in Major county, Oklahoma.

The city of Enid filed objections to the report of the commissioners on the ground that the damages assessed were excessive and therefore requested a trial by jury on the question of the damage and compensation awarded. Thereafter, the demand for a jury trial was withdrawn by the city. We assume in our disposition of the case that the condemnation money was paid into the office of the court clerk, as provided by the statutes.

The defendant Carrie Bowles, the owner of the tract in question, as well as all other defendants, filed motions to dismiss the city of Enid's application on the following grounds:

(1) That the statutes of the State of Oklahoma do not give an incorporated city the right of eminent domain as to ground waters.

(2) The ground water law of Oklahoma (1949) establishes a special and exclusive procedure for the determina-

tion of rights in the ground waters of the State of Oklahoma.

The towns of Okeene and Ames filed separate motions, alleging priority rights in the underground water sought to be appropriated by the city of Enid. Their separate grounds for dismissal will be referred to infra.

The plaintiff's petition in detail alleges that the city has, by proper proceedings, begun the construction of a water works supply system to obtain an additional and needed water supply by locating a water well on the land above described, and has laid 19 miles of water main to said well; that the title to the described land is vested in the defendant Carrie Bowles, and that the other named defendants claim some interest in the land; that by appropriate resolution the governing body of the city declared the necessity of acquiring an easement and right to drill a water well upon said land and appropriate the water therefrom as a municipal water supply, together with right of ingress and egress to said well.

The separate motions of defendants to dismiss raised a novel question under the asserted rights of a municipal corporation to appropriate, by condemnation proceeding, underground water or so-called percolating water.

The defendant Bowles, the owner of the fee land, contends that a municipal corporation does not have the right of eminent domain as to ground waters, and in support of this assertion, relies on Tit. 11 O.S. 1951 §§291, 292, 293, 305, 563 and 670, and Tit. 27 O.S. 1951 §5, and Tit. 60 O.S. 1951 §60. The city of Enid relies on the same statutes in the support of the opposite view. Decisions of this court are cited in the respective briefs to which we will advert, which are claimed to support the respective issues posed by the case.

The city of Enid argues that we should give due consideration to the various acts of the Legislature relied on, and from them, aided by such light as their judicial construction affords, sustain the trial court's judgment.

The defendant landowner argues that as the quoted Acts do not expressly delegate the power of eminent domain over ground water to municipalities, that they must obtain their water supply from streams or from surface water. It is asserted that this position is fortified by the provisions of the Oklahoma Ground Water Law (1949), Tit. 82 O.S. 1951 §§1001-1019, under which the Oklahoma Planning & Resources Board is granted exclusive authority in the appropriation and allocation of ground water.

In our discussion of the English and American rule with reference to underground waters and the correlative rights therein, we declined in Canada v. City of Shawnee, 179 Okla. 53, 64 P. 2d 694, to follow the declared English or common-law rule concerning the rights of percolating water as belonging to the ownership in the freehold, like rocks, soil, and minerals therein and thereunder, and that the owner might make whatever use he pleases, regardless of the fact that his use deprives an adjoining landowner of their use.

We adopted the rule as expressed by a majority of the courts that each owner or appropriator of the underground water must so use it as not to destroy correlative rights vested in other owners or users thereof.

It must be assumed our adoption of the reasonable use theory, as applied to underground waters, was based upon the peculiar physical conditions of our state. Certain areas may be termed wet; others are termed dry or semi-arid. In portions of the state there are few or no rivers and the smaller streams in dry seasons fail to produce running water. It must, therefore, be presumed that the Legislature did not intend to establish as a state public policy that a municipality was limited under its rights of eminent domain to

the acquisition or surface or running water only.

The U. S. Geological Survey, in co-operation with the Oklahoma Planning & Resources Board, within the year. has compiled a survey of the public water supplies in Oklahoma. This report discloses that the surface supplies provide water for most of the larger communities in the state. Of the 100 cities and towns of this group, 74 use reservoirs and 26 obtain their supply directly from the stream with little or no empoundment; that of the 264 municipal towns or communities obtaining their principal supply from the ground water sources, 247 use wells and 17 use springs.

Although available data does not disclose whether these ground water rights were acquired by purchase or condemnation, it may reasonably be assumed that in many cases the rights were obtained under condemnation proceedings. It is significant that we are not cited to any decision of this court denying the right of a municipal corporation to acquire ground water under a proceeding of eminent domain.

That a municipal corporation has appropriated ground water under condemnation proceedings, is disclosed by our decision in Shell Petroleum Corporation v. Town of Fairfax, 180 Okla. 326, 69 P. 2d 649. The propriety of the condemnation proceedings there involved was not raised by the owner of the land, but by the defendants by way of collateral attack. The town of Fairfax in a condemnation proceeding acquired one acre of land out of an Indian citizen's allotment located near the town of Fairfax. The city drilled a well and appropriated the water produced therefrom for municipal purposes. The city sued a number of oil companies, claiming that their mineral operations polluted the water well. The companies defended on the ground that the town of Fairfax did not have the right or power to condemn the land in question. The decision turned on the point that where a town vested with the power of eminent domain enters into actual possession of land necessary for its corporate purposes under condemnation proceedings in which there may have been some defects, and makes valuable and lasting improvements and remains in continuous possession thereof without objection of the owner for a long period of time, such appropriation will be treated as equivalent to title by condemnation regularly acquired.

Counsel for the respective parties rely on our decision in Canada v. City of Shawnee, 179 Okla. 53, 64 P. 2d 694, as a controlling authority to support their respective contentions. As we read this case, it contains no authoratative statement to the effect that a municipal corporation may or may not condemn underground water. The opinion arguendo states:

"There is no doubt that the City of Shawnee might have commenced an action in condemnation to acquire the right in the nature of an easement to draw water from plaintiff's land if such is necessary for the public good."

The city did not tender or attempt to tender the issue of eminent domain. Its theory was that it was under no duty or obligation whatsoever to plaintiffs. The right of condemnation was passed sub silentio. A question which merely lurks in the record, never brought to the attention of the court, not ruled upon, is not to be considered as having been so decided as to constitute precedent. The Shawnee case did decide one important question. The city had purchased 70 acres of land and drilled 12 water wells thereon. Adjacent landowners brought injunction suits, claiming the wells were exhausting their underground water.

Injunctions were denied. They then brought suits for damages and, on appeal, we held:

"The owner of land may draw from beneath its surface as much of the percolating waters therein as he needs, even though the water of his neighbor is thereby lowered, so long as the use

to which he puts it bears some reasonable relationship to the natural use of his land in agricultural, mining, or industrial and other pursuits, but he may not forcibly extract and exhaust the entire water supply of the community, causing irreparable injury to his neighbors and their lands, for the purpose of transporting and selling said water at a distance from and off the premises."

A quite similar situation was presented in the City of Stillwater v. Cundiff, 184 Okla. 375, 87 P. 2d 947. The city drilled 6 wells on its fee-owned land. Cundiff, an adjoining landowner, brought suit claiming the city was completely exhausting his underground water, causing his wells to go dry. The court held that Cundiff could recover, as damages, the difference in value of his land before and after the injury sustained, which were occasioned by the exhaustion of his underground waters.

The principle of correlative rights in rivers and streams has been uniformly applied and we perceive no reason why the rule cannot be equally applied to ground water. Public policy and a due regard for the general welfare argue strongly in support of the rule.

The principle was stated by the Supreme Court of the United States in its discussion of corrrelative rights in oil and gas produced from a common source of supply in the leading case of Ohio Oil Co. v. Indiana, 177 U. S. 190, 44 L. Ed. 729, 20 S. Ct. 576, and as applied to the taking of mineral waters from a common source of supply in Lindsley v. National Carbonic Gas Co., 220 U. S. 61, 55 L. Ed. 369, 31 S. Ct. 337.

The statutes, supra, relied upon by the respective parties will be noted. Under Tit. 11 O. S. 1951 §291, we find:

"All incorporated towns and cities in this State are hereby authorized and empowered to purchase, erect, lease, rent, manage and maintain any system or part of system of water works, hydrants and supply of water, * * *."

Sec. 292, supra, in part, provides that the councils of such cities or the board of trustees of such town, shall have the power to dam any river or stream not navigable and condemn and appropriate land in or out of the city for construction and operation of such water from the streams.

Sec. 293, supra, in part, provides that the governing body of the municipality may purchase or condemn land for water works plants and every auxiliary part thereof, including reservoir sites.

Sec. 305, supra, in part, provides that the municipality may acquire land and water for future need and may, for that purpose, acquire lands and water and are invested with the power of eminent domain for that purpose. (It will be noted that under this section, condemnation applies to water without expressly defining its source).

Under sec. 563, of the act, municipalities are granted the right of eminent domain and may acquire real estate for sites for water works.

Under sec. 670, of the act, the municipalities are granted general powers to condemn private property for the enumerated public use as provided for railroad purposes.

Under Tit. 27 O. S. 1951 §5, the local governments, including cities and towns, are granted the power to condemn lands in like manner as railroad companies.

Tit. 60 O. S. 1951 §60 provides as follows:

"The owner of the land owns water standing thereon, or flowing over or under its surface, but not forming a definite stream. Water running in a definite stream, formed by nature over or under the surface, may be used by him as long as it remains there; but he may not prevent the natural flow of the stream, or of the natural spring from which it commences its definite course, nor pursue nor pollute the same."

In view of what we have heretofore said, we should not give these legis-

lative acts a. too limited construction. The overriding public policy of the state and the general welfare of a great number of its people, compel us to the conclusion that the municipalities of the state may, under the law of eminent domain, appropriate ground water for their reasonable municipal requirements.

In Canada v. Shawnee, supra, we said:

"A municipal corporation owning land is subject to the same rules of law concerning rights in percolating water thereunder as is a private individual."

In the case before us · no claim is made that compensation is inadequate. The defendant Bowles is deprived of the acre in the corner of her 160-acre tract of land and such water to be ·taken from the well therefrom as the city may appropriate for a public use.

The conclusion here reached in no manner forecloses any right or privilege in the reasonable use of underground waters of owners of adjacent lands. Their rights are recognized in our Shawnee and Stillwater decisions, supra. Moreover, their rights are protected under §24, art. 2, of the Constitution, providing:

"Private property shall not be taken or damaged for public use without just compensation."

It is, however, asserted by defendant Bowles, and other defendants, that the Ground Water Law of Oklahoma (1949) establishes a special and exclusive procedure for the determination of rights in the ground waters within the State of Oklahoma, which law does not contemplate the exercise of right of eminent domain.

The Oklahoma Ground Water Law, Tit. 82 O. S. 1951 §§1001-1019, creates a "Board" known as the Planning and Resources Board. The Board is authorized to establish "ground water basins," defining the area. The policy of the Act contemplates the conservation of the underground water and its efficient use. Upon application an owner of land,· or one holding a lease on land within the basin, permits are to be issued by the Board, authorizing the withdrawal of water for various uses. Priority rights are established in the order of filings and the appropriation and the actual use of water.

After the basin is established, the right of applicants in the use of the water is to be determined in a proceeding in the district court in which the land is situated. In this proceeding, the Attorney General is required to appear on behalf of the state. The court is required to enter a decree, defining the area, safe yield and annual recharge of the ground water basin, the priority of existing claims of all persons to appropriate the water within such ground' water basins. An appeal may be lodged in the Supreme Court. Finally, the Act imposes fines for taking water from the basin without a permit from the board, or taking excessive amounts of water in excess of allocations, or the waste thereof, as defined in the Act.

This Act does not withdraw the privilege of municipal corporations to invoke the law of eminent domain.

That a municipality may appropriate underground water for municipal purposes is indicated by sec. 1003, supra, which provides:

"It is hereby declared to be the public policy of this State, in the interest of the argricultural stability, domestic, municipal, industrial and other beneficial uses, general economy, health and welfare of the State and its citizens, to conserve and protect the ground water resources of the State and for that purpose to provide reasonable regulations for the taking and use of ground water."

This legislative expression recognizes the advisability to conserve underground water for the benefit of a municipality, as well as for those enumerated therein. There appears no irreconcilable conflict under the law of

eminent domain and the application and enforcement of the Oklahoma Ground Water Law.

The town of Ames and the town of Okeene, codefendants with the defendant Bowles, join in motions to dismiss. What we have heretofore said as to the right of condemnation and the correlative rights in the appropriation of ground waters as applied to the city of Enid, applies equally to these movants.

The adoption of the rule of reasonable use of the ground water in the state, will avoid insidious discrimination between persons and municipal corporations. The Ground Water Law establishes a comprehensive plan for equitable use of this source of water supply. The judgment of the trial court is affirmed.

HALLEY, V. C. J., and WELCH, CORN, DAVISON, JOHNSON, and BINGAMAN, JJ., concur.